Warren Eugene THOMPSON,
Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–05–00694–CR, 01–05–00704–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 14, 2006.

Discretionary Review Refused
June 20, 2007.

Jeffrey D. Kyle, Pearland, TX, for Appellant.

Jeri Yenne, Criminal District Attorney, David Bosserman, Assistant Criminal District Attorney, Angleton, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Warren Eugene Thompson, of injury to a child (appellate cause number 01–05–00694),[1] a third degree felony, and sentenced him to ten years' imprisonment. The jury also convicted appellant of injury to a child by omission (appellate cause number 01–05–00704),[2] and sentenced him to 10 years' community supervision. The jury made an affirmative finding that appellant used a

---

1. TEX. PEN.CODE ANN. § 22.04(a)(3) (Vernon Supp.2006).

2. *Id.* § 22.04(a)(3), (b) (Vernon Supp.2006).

deadly weapon during the commission of both offenses. The jury also assessed a $10,000 fine in each case. In four issues, appellant argues that (1) the evidence is legally and factually insufficient to support his conviction for injury to a child by omission; (2) the evidence is factually insufficient to support his conviction for injury to a child; and (3) the trial court erred in refusing to charge the jury on the lesser included offense of recklessly causing bodily injury to a child.

We affirm.

### Facts

At the time of the offense, appellant lived with his girlfriend, Sheila Crowder, and her five-year-old daughter, R.C., in an apartment in Pearland, Texas. Around 5:00 p.m. on February 27, 2004, Ronald Weidman, an investigator for Child Protective Services, arrived at appellant's apartment to investigate a call about R.C. Only appellant and R.C. were at home; Crowder was at work. Weidman explained why he was there and asked to speak to R.C. in private; appellant consented. As Weidman and R.C. walked to her bedroom, he noticed that the way she walked indicated that she was in pain.

Once in R.C.'s bedroom, Weidman conducted a tape recorded interview. After asking some preliminary questions, Weidman asked R.C. what had happened to her feet. She initially stated, "I turned the water on, and it got hot. I got in the shower, and it got hot." A few questions later, when Weidman asked whether appellant had been involved, R.C. answered that he had held her feet under the water because she had lied. Weidman then tried to take off her socks, but R.C. resisted, saying, "It hurts—I hurt bad." Afraid that he might aggravate her injuries, Weidman decided to wait and let someone else remove her socks. When Crowder arrived at the apartment, she took off R.C.'s socks, and Weidman saw that R.C.'s feet had been "burned very badly; and one of the blisters on one of the feet appeared not to have closed completely." Weidman took some photographs of R.C.'s feet, which were later admitted at trial.

After speaking with his supervisors, Weidman asked Crowder to voluntarily place R.C. with a friend or relative; Crowder agreed. That evening, R.C. was placed with her grandmother, Mrs. Burkett. The next morning, Crowder, Burkett, and Weidman took R.C. to the emergency room at the University of Texas Medical Branch (UTMB) in Galveston where topical treatment was recommended. Up to that point, according to Weidman, there was no evidence of any treatment in the approximately two months since the burns had occurred, except socks being used as bandages.

Almost two weeks later, R.C. was taken to the ABC Clinic in Galveston, a facility for examining children who may be the victims of abuse and neglect. Eva Novak Blight, a nurse practitioner, performed a head-to-toe physical examination of R.C., noting that R.C. had difficulty walking and was in pain while doing so. Scar tissue had also begun to form, tightening the skin on the tops of R.C.'s feet and pulling up her toes. Blight testified that, if the burns had been properly treated from the beginning, the pulling of the toes would not have been a concern. While this is something that can be corrected, according to Blight, it is "not a simple one-time done deal," but "a serial procedure." Blight also noticed that the bottoms of R.C.'s feet had not been burned, there were no splash marks, and there were lines of demarcation on her feet—all signs of abuse. When Blight asked R.C. how her feet had been burned, she responded, "My daddy held my feet in

the water, and I burned my feet. I was being bad."

Blight further testified that Burkett had told her that some wet-to-dry dressings and burn ointment had been applied by R.C.'s mother. This treatment, according to Blight, had not enhanced the injury, but had done nothing to aid the healing process; the burns had required immediate emergency care. She also testified that, while socks are used to hold dressings in places, they are not used alone. Gauze, or something non-adherent that comes off easily without taking new skin with it, should have been used for R.C.'s burns. When asked to look at the pictures Weidman had taken of R.C.'s feet, Blight noticed that a significant piece of tissue was missing from the top of her left foot, hypothesizing that any new skin that had formed kept getting pulled off.

While at the ABC Clinic, Dr. Lukefahr also examined R.C., noting that the bottoms of her feet had not been burned, there were no splash marks, and there were sharp lines of demarcation on her feet. These were all signs of a forced immersion, Dr. Lukefahr testified, because under normal circumstances, R.C. would have reflexively tried to get her feet out of the water. The medical evidence, according to Dr. Lukefahr, did not support the conclusion that R.C. had injured herself. Ultimately concluding that the burns to R.C.'s feet were so severe that she required the care of a burn specialist, he immediately made arrangements for her to be treated at Shriners Burn Hospital in Galveston.

A few days later, R.C. saw Dr. Sanford at Shriners Burn Hospital. After examining her feet, he prescribed topical treatment for the open wound on her left foot and several different treatments for scar management. When asked about the lack of medical care for R.C. and whether this lack of care had influenced her recovery, Dr. Sanford replied that skin grafting is recommended for wounds taking longer than two weeks to heal. During his testimony, Dr. Sanford—also emphasizing that the bottoms of R.C.'s feet were not burned, there were defined lines of demarcation, and there were no splash marks—concluded that her case had "many of the hallmarks of a forced immersion." Dr. Sanford further testified that at 120 degrees Fahrenheit—the maximum temperature of the water at appellant's apartment—it would take approximately six and one-half minutes for a five-year-old child, like R.C., to suffer third-degree burns. Upon seeing the pictures Weidman had taken, Dr. Sanford noted "an area on the top of her left foot that [was] open and . . . that was probably originally a full thickness burn . . ."—*i.e.*, a third-degree burn.

Weidman and C. Arnold, a detective in the Pearland Police Department, both testified about appellant's explanation for the burns to R.C.'s feet. Weidman testified that when he asked appellant how R.C. had burned her feet, appellant said that he had gone into the bathroom and found her straddling the spigot with the hot water on. He had then put her on the side of the tub and she burned her feet while sitting there as the water rose. Appellant later told Detective Arnold that R.C. went into the bathtub to prepare her water. When he later walked by, he saw her standing in the tub, near the faucet, with her feet spread out to the edges of the tub. When appellant asked her what was wrong, she answered that the water was hot. He then picked her up and took her out of the tub, noticing that the skin on the top of her feet was peeling.

At trial, appellant called Dr. Nicholas Edd, a psychologist, who testified that the technique used to interview R.C. was flawed because the interview was rushed,

leaving little time for R.C. to process information, and many of Weidman's questions were leading. "[F]aulty interview techniques," according to Dr. Edd, "can cause very inaccurate recall and facilitate reports that are not valid."

### Sufficiency of the Evidence Standard of Review

■ When an appellant challenges both the legal and factual sufficiency of the evidence, we must first determine whether the evidence was legally sufficient to support the verdict. *Harmond v. State*, 960 S.W.2d 404, 406 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

### *Legal Sufficiency*

■ We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000); *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all the evidence presented at trial, we may not reweigh the evidence and substitute our judgment for that of the fact finder. *King*, 29 S.W.3d at 562.

### *Factual Sufficiency*

■ We begin the factual sufficiency review with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We view all of the evidence in a neutral light,[3] and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust or the conflicting evidence is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 10–11 (Tex. Crim.App.2000). Regarding the second basis for a finding of factual insufficiency, "an appellate court must ... be able to say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict before [the court] is justified in exercising its appellate fact jurisdiction to order a new trial." *Watson v. State*, No. PD–469–05, 2006 WL 2956272, at *10 (Tex.Crim.App. Oct.18, 2006) (emphasis omitted). Our evaluation may not intrude upon the fact finder's role as the sole judge of the weight and credibility accorded any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 407 n. 5 (Tex.Crim.App.1997). What weight to be given contradictory testimonial evidence is within the sole province of the fact finder because it turns on an evaluation of credibility and demeanor. *Id.* at 407–09. The fact finder may choose to believe all, some, or none of the testimony presented. *Hughes v. State*, 897 S.W.2d 285, 289 (Tex.Crim.App.1994). We must defer appropriately to the fact finder to avoid substituting our judgment for its judgment. *See Johnson*, 23 S.W.3d at 12. For a review of factual sufficiency, we must consider the most important evidence that appellant claims undermines the verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

### Injury to a Child: The Law

Under the Texas Penal Code, a person commits an offense if, by his act, he intentionally, knowingly, recklessly, or with criminal negligence causes bodily injury to a child. Tex. Pen.Code. Ann. § 22.04(a)(3). A person also commits an offense if, by his omission, he intentionally, knowingly, recklessly, or with criminal negligence causes

---

**3.** *Ladd v. State,* 3 S.W.3d 547, 557 (Tex.Crim. App.1999).

bodily injury to a child, and the person either (1) has a legal or statutory duty to act or (2) has assumed care, custody, or control of the child. *Id.* § 22.04(a)(3), (b). A person intentionally causes a result of his conduct when it is his conscious desire to cause that result. *Id.* § 6.03(a) (Vernon 2003). A person knowingly causes a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b) (Vernon 2003). A person recklessly causes a result of his conduct when he is aware but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c) (Vernon 2003). A bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp.2006).

■ Injury to a child, either by omission or by overt action, is a "result of conduct" offense. *Johnston v. State,* 150 S.W.3d 630, 634 (Tex.App.-Austin 2004, no pet.) (citing *Alvarado v. State,* 704 S.W.2d 36, 39 (Tex.Crim.App.1985)). This means that the culpable mental state relates not to the nature or circumstances surrounding the charged conduct, but to the *result* of that conduct. *Patterson v. State,* 46 S.W.3d 294, 301 (Tex.App.-Fort Worth 2001, no pet.) (citing *Haggins v. State,* 785 S.W.2d 827, 828 (Tex.Crim.App.1990)). In other words, the accused must have acted with the requisite culpable mental state to effect the result. *See id.* (citing *Alvarado,* 704 S.W.2d at 39).

### Count One: Injury by Act

■ In his third issue, appellant argues that the evidence is factually insufficient to support his conviction for injury to a child by holding R.C.'s feet under water.

The first count of the indictment charged appellant with "intentionally or knowingly caus[ing] serious bodily injury to [R.C.], a child . . ., by holding [R.C.] in hot water thereby causing burns to [her] feet." The jury found appellant not guilty of this charge, but did find him guilty of the lesser included offense of injury to a child, a third degree[4] rather than a first degree felony,[5] as charged in the indictment. Applying the law to the convicted offense, the State was required to prove that, by holding R.C.'s feet in the hot water, appellant consciously desired to cause R.C. physical pain, illness, or an impairment of her physical condition, or that appellant was aware that doing so was reasonably certain to cause R.C. physical pain, illness, or an impairment of her physical condition. *See* TEX. PEN.CODE ANN. §§ 1.07(a)(8), 6.03(a)-(b), 22.04(a)(3); *Dusek v. State,* 978 S.W.2d 129, 133 (Tex. App.-Austin 1998, pet. ref'd).

At trial, Weidman testified that appellant had said that R.C.'s feet were burned while she was sitting on the side of the tub as the water grew higher. Appellant also presented expert testimony that the technique used to interview R.C. was flawed because the interview was rushed, leaving little time for R.C. to process the questions, and many of the questions were leading. Appellant argues that the jury's verdict was not rationally justified. We disagree.

■ As stated above, because a jury is free to believe some, all or none of the testimony of a witness, a jury's decision is not manifestly unjust merely because it has resolved conflicting views of evidence in favor of the State. *See Cain,* 958 S.W.2d at 409–10. Here, the jury was free to discredit the expert testimony and be-

---

**4.** TEX. PEN.CODE ANN. § 22.04(f) (Vernon Supp. 2006).

**5.** *Id.* § 22.04(e) (Vernon Supp.2006).

lieve R.C.'s taped statement that appellant had held her feet in the hot water. Furthermore, the State presented significant evidence at trial undermining appellant's explanation for how R.C. burned her feet. Dr. Lukefahr testified that the medical evidence did not support the conclusion that R.C. had injured herself. Under normal circumstances, she would have reflexively tried to get her feet out of the water. Here, however, both feet had symmetrical lines of demarcation, the bottoms of her feet were not burned, and there were no splash marks—all consistent with a forced immersion. Dr. Sanford further testified that, at 120 degrees Fahrenheit—the maximum temperature of the water at appellant's apartment—it would take approximately six and one-half minutes for a five-year-old, like R.C., to suffer third-degree burns.

Thus, after neutrally examining all the evidence,[6] we hold that the proof of guilt was not so weak that the verdict is clearly wrong or manifestly unjust nor is the verdict against the great weight and preponderance of the evidence. *See Johnson,* 23 S.W.3d at 10–11.

We overrule appellant's third issue.

### Count Two: Injury by Omission

In his first two issues, appellant argues that the evidence presented at trial was legally and factually insufficient to prove that he intended to injure R.C. by his omission or that he was aware that his omission would cause her injury.

The second count of the indictment charged appellant with "intentionally or knowingly, by omission, caus[ing] bodily injury to [R.C.], a child ..., by failing to provide her proper medical care." Applying the law above to count two of the indictment, the State had to prove more

than that appellant failed to provide medical care for the burns to R.C.'s feet. *See Thornton v. State,* 994 S.W.2d 845, 849 (Tex.App.-Fort Worth 1999, pet. ref'd); *see also Dusek,* 978 S.W.2d at 133. The State was required to prove that, by failing to provide proper medical care for her burns, appellant consciously desired to cause R.C. physical pain, illness, or an impairment of her physical condition, or that appellant was aware that a lack of proper medical care was reasonably certain to cause R.C. physical pain, illness, or an impairment of her physical condition. *See* TEX. PEN.CODE ANN. §§ 1.07(a)(8), 6.03(a)-(b), 22.04(a)(3), (b); *Dusek,* 978 S.W.2d at 133.

### *Legal Sufficiency*

 Relying on two Austin Court of Appeals decisions, appellant argues that because there was no evidence that appellant (1) failed to heed warnings that R.C. needed medical attention, (2) made R.C. put on shoes over her socks, thereby exaggerating or increasing her injury, or (3) did not take R.C. to a doctor because he was hiding abuse, the evidence is legally insufficient to support the jury's omission verdict. *See Johnston,* 150 S.W.3d at 636–37; *Dusek,* 978 S.W.2d at 133. Rather, appellant argues that the evidence shows only that he knew or should have known that R.C. was in pain and that she needed, and should have received, medical attention.

In *Dusek,* the defendant was found guilty of intentionally or knowingly causing serious bodily injury to a child for failing to get medical treatment for her son's broken leg. *Dusek,* 978 S.W.2d at 133. The court found the evidence to be insufficient, however, because there was no evidence that the defendant's failure to seek medical care for her son caused his broken leg or aggravated the seriousness of the

---

6. *See Ladd,* 3 S.W.3d at 557.

injury: no one testified at trial that his leg had been broken for an unusual amount of time or that treatment had been delayed, or that his recovery had been hindered by a delay in receiving medical care. *Id.*

While it is true that a lack of medical care did not cause the burns on R.C.'s feet, significant evidence showed that a forcible immersion in the hot water did and that the two-month delay in getting R.C. proper medical care aggravated her injury and hindered her recovery. *See id.* Blight testified that when she examined R.C., approximately two and one-half months after the initial injury, scar tissue had already begun to form on R.C.'s feet and pull up her toes, which would not have happened if she had received immediate medical care. While this pulling of the toes can be corrected, according to Blight, it is "not a simple one-time done deal," but "a serial procedure." Furthermore, Dr. Sanford testified that skin grafting is recommended for wounds taking longer than two weeks to heal. Two months after her initial injury, however, R.C. still had an open wound on the top of her left foot.

In *Johnston,* the defendant was also found guilty of intentionally or knowingly causing serious bodily injury to a child for failing to get medical treatment for his step-son after physically abusing him. *Johnston,* 150 S.W.3d at 631, 633. At trial, the State presented evidence that he had discussed his step-son's deteriorating medical condition with his wife but decided not to take him to the hospital, fearing that his abuse of the boy would be discovered. *Id.* at 636. The Court noted that, although this evidence leads to the conclusion that the defendant's intent in not getting his step-son medical care was to hide the abuse rather than to cause him harm, it also showed that the defendant was aware of his step-son's serious medical condition and the need to take him to the hospital.

*Id.* The court cited this and the boy's numerous symptoms as evidence supporting the jury's finding that the defendant was aware that a lack of medical care was reasonably certain to cause serious bodily injury to his step-son. *Id.* at 636–37. This evidence, the court concluded, was sufficient to support the verdict. *Id.*

While it is also true that the State presented no evidence that appellant was trying to hide abuse, appellant admits in his brief that the evidence shows that he knew or should have known that R.C. was in pain and that she needed, and should have received, medical attention. *See id.* at 633. Furthermore, without medical care, R.C. continued to feel pain in her everyday activities. When Weidman tried to remove her socks during their interview, R.C. resisted, saying, "It hurts—I hurt bad," and both Weidman and Blight testified that simply walking appeared to be painful for R.C.

We conclude, based on the evidence presented at trial, that a jury could have found beyond a reasonable doubt that appellant was aware that failing to provide R.C. with proper medical care was reasonably certain to cause R.C. physical pain, illness, or an impairment of her physical condition. *See* Tex. Pen.Code Ann. §§ 1.07(a)(8), 6.03(a)-(b), 22.04(a)(3), (b); *Dusek,* 978 S.W.2d at 133.

We overrule appellant's first issue.

### *Factual Sufficiency*

■ For a review of factual sufficiency, we must consider the most important evidence that the appellant claims undermines the jury's verdict. *Sims,* 99 S.W.3d at 603. Appellant argues that the combined testimony of the State's four witnesses shows that R.C.'s injuries were not serious—as found by the jury—and that he, along with R.C.'s mother, cared for those injuries. The record contains substantial evidence, however, that R.C.'s in-

162

juries were serious and that the care given was not proper. Blight testified that any wet-to-dry dressings and burn ointment that had been applied, while not enhancing the injury, had done nothing to aid the healing process; the burns had required immediate emergency care. She also testified that, while socks are used to hold dressings in place, they are not used alone; gauze or something non-adherent, which comes off easily without taking new skin with it, should have been used. Dr. Lukefahr, after seeing R.C.'s two-and-one-half-month-old injuries, felt R.C. needed to be under the care of a burn specialist and immediately contacted the Shriners Burn Hospital in Galveston for treatment. At least two months after her injuries, R.C. still had an open wound on her left foot and scar tissue had already begun to develop, which tightened the skin on the top of her feet and pulled up her toes. With appropriate medical treatment, this additional injury would not have been a concern.

The jury has the sole province to decide what weight is to be given to contradictory testimony as it turns on an evaluation of credibility and demeanor. *Cain,* 958 S.W.2d at 408–09. A jury is free to believe any or all of the testimony of the State's witnesses. *Hughes,* 897 S.W.2d at 289. The jury's decision, therefore, is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Cain,* 958 S.W.2d at 410. Here, the jury was free to discredit the evidence that appellant and her mother cared for R.C. and that her injuries were not serious.

Thus, after neutrally examining all the evidence,[7] we find that the proof of guilt was not so weak that the verdict is clearly wrong or manifestly unjust nor is the verdict against the great weight and prepon-

derance of the evidence. *See Johnson,* 23 S.W.3d at 10–11.

We overrule appellant's second issue.

## Lesser–Included Offense

In his fourth issue, appellant complains that the trial court erred when it refused to charge the jury on the lesser included offense of recklessly causing bodily injury to a child.

To preserve error relating to a jury charge, there must either be an objection or a requested charge. *Starks v. State,* 127 S.W.3d 127, 133 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd). Here, appellant did not submit a jury charge containing an instruction on the lesser included offense. Accordingly, to preserve any error in relation to the jury charge, appellant was required to make a specific objection to the trial court's charge. *See id.* (citing Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon 1999)). To preserve error for appellate review, a timely and reasonably specific objection, followed by an adverse ruling, is required. Tex.R.App. P. 33.1(a). Additionally, if the argument presented on appeal is not the same as the objection raised at trial, no error is preserved and review is waived. *Butler v. State,* 872 S.W.2d 227, 236 (Tex. Crim.App.1994); *Sandoval v. State,* 52 S.W.3d 851, 855 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

At trial, appellant objected to the court's jury charge, arguing that, "[i]f the jury so found that he may not have known that the injury would occur, then the thought process would be left that it was a reckless act." In other words, appellant was arguing that the court should include a charge on recklessness because the jury could conclude that appellant (1) held R.C.'s feet

7. *See Ladd,* 3 S.W.3d at 557.

# 163

under the water, aware of, but consciously disregarding the risk of her feet getting burned and (2) failed to seek medical care for R.C.'s burns, aware of, but consciously disregarding the risk of further injury. *See* TEX. PEN.CODE. ANN. § 6.03(c). On appeal, however, appellant argues only that the evidence that he, after finding R.C. standing in the tub, then sat her down on the side of the tub, supports a finding of recklessness. Consequently, appellant's objection to the jury charge does not match his fourth issue on appeal. *See Sandoval,* 52 S.W.3d at 855; *Butler,* 872 S.W.2d at 236. His argument, therefore, is not preserved for review. *See Sandoval,* 52 S.W.3d at 855; *Butler,* 872 S.W.2d at 236.

Although appellant failed to preserve this argument for review, we may still reverse if the record shows that the trial court's failure to instruct the jury on recklessness caused "egregious harm" to the appellant. *See Bluitt v. State,* 137 S.W.3d 51, 53 (Tex.Crim.App.2004) (holding an appellant may raise unobjected-to jury charge error on appeal, but may not obtain reversal for such error unless it resulted in "egregious harm"); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Martinez v. State,* 190 S.W.3d 254, 258 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). Thus, we review an alleged jury charge error by considering (1) whether error existed in the charge and (2) whether sufficient harm resulted from the error to compel reversal. *See Martinez,* 190 S.W.3d at 258 (citing *Posey v. State,* 966 S.W.2d 57, 60, 75 n. 5 (Tex.Crim.App. 1998)).

 A jury must be charged on a lesser included offense if (1) the requested charge is a lesser included offense of the offense charged and (2) some evidence exists in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. *Irving v. State,* 176 S.W.3d 842, 845 (Tex.Crim.App.2005). An offense is a lesser included offense if "it is established by proof of the *same or less* than all the facts required to establish the commission of the *offense charged.*" *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2006) (emphasis added). In other words, the conduct alleged by the appellant in support of the instruction on the lesser included offense must be included within the conduct charged. *Hayward v. State,* 158 S.W.3d 476, 480 (Tex.Crim.App.2005).

Under the Texas Penal Code, a person commits an offense if, by his act, he intentionally, knowingly, recklessly, or with criminal negligence causes serious bodily injury to a child. TEX. PEN.CODE ANN. § 22.04(a)(1) (Vernon Supp.2006). Appellant argues that because the offense encompasses all culpable mental states, recklessly causing bodily injury to a child is a lesser included offense of both intentionally and knowingly causing bodily injury to a child. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 2006); *see also Moore v. State,* 154 S.W.3d 703, 711 (Tex.App.-Fort Worth 2004, pet. ref'd). What appellant fails to recognize, however, is that while recklessly causing bodily injury to a child may be a lesser included offense of intentionally and knowingly doing so, he is asking for a lesser included offense instruction based on facts not required to establish the commission of the offense charged. *See Irving,* 176 S.W.3d at 845; *Hayward,* 158 S.W.3d at 480.

The first count of the indictment alleged that appellant intentionally or knowingly caused serious bodily injury to R.C. by holding her feet in hot water. On appeal, however, appellant argues that the evidence that he placed R.C. on the side of the tub and that she burned her feet as the water filled the tub supports a reckless-

ness charge. Because the conduct constituting the offense charged is different than the conduct constituting the offense of the requested charge, recklessly injuring R.C. is not a lesser included offense of intentionally or knowingly doing so. *See Irving,* 176 S.W.3d at 846. Proof that appellant placed R.C. on the side of the tub is not required to prove that he injured R.C. by holding her feet in hot water. Thus, because the conduct alleged by appellant is not included within the conduct charged, the trial court was not required to instruct the jury on recklessness. *See Hayward,* 158 S.W.3d at 480. Accordingly, the jury charge contained no errors, and we need not conduct a harm analysis. *See Martinez,* 190 S.W.3d at 258 (citing *Posey,* 966 S.W.2d at 60, 75 n. 5).

We overrule appellant's fourth issue.

### Conclusion

We affirm the judgment of the trial court.