Opinion issued February 12, 2009
 
 















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00296-CR
NO. 01-07-00297-CR
 

 
 
JAMIE LYNNE MOSBY WILLIAMS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee



On Appeal from the 204th District Court
Fort Bend County, Texas
Trial Court Cause Nos. 42828 and 42888 

 
O P I N I O N
          A jury found appellant, Jamie Lynne Mosby Williams, guilty of capital murder
and guilty of serious bodily injury to a child by omission. Punishment for both
offenses was assessed at life imprisonment. 
          On appeal, appellant challenges her conviction for capital murder by arguing
that (1) the evidence presented at trial was legally and factually insufficient to support
her conviction for that offense, and (2) the trial court erred by not including an
instruction to the jury on the lesser-included offense of serious bodily injury to a
child. Appellant challenges her conviction for serious bodily injury to a child by
omission by arguing that (1) the evidence presented at trial was legally and factually
insufficient to support her conviction for that offense and (2) her right to be free from
double jeopardy was violated when she was tried for both capital murder and serious
bodily injury to a child by omission, because she argues that the latter is a lesser-
included offense of the former. Appellant challenges both convictions by arguing
that the trial court erred in admitting autopsy photographs and in excluding her
expert’s testimony during the guilt/innocence stage. 
          We affirm.
Background
          Appellant and her husband, DeMario Williams, lived with appellant’s two-year
old son, Joivonni Viverette,


 in Missouri City, Texas. On August 6th, 2005,
appellant’s neighbor, Christian Harris, saw Joivonni playing in appellant’s front yard
while appellant and DeMario were preparing to cut the grass. At approximately
10:00 p.m., appellant and DeMario brought Joivonni to Christian’s garage, where
Christian and several friends were listening to music. Witnesses testified that
Joivonni appeared to be unconscious, and at least one witness testified that the child
was not breathing. Several people at Christian’s house told appellant that Joivonni
needed medical attention and offered to call an ambulance or drive them to the
hospital. Appellant declined the offer, explaining that they would call the ambulance
themselves, and took Joivonni back to their house.
          At around eleven o’clock the next morning, paramedic Terry White arrived at
appellant’s house after receiving a call that a two-year-old child had suffered cardiac
arrest. White testified that when he found Joivonni, the child was not breathing, had
no pulse, and exhibited rigor mortis, indicating that he had been dead for 12 hours. 
White also stated that the child was covered in cuts, bruises, and puncture wounds at
different stages of healing. White testified that DeMario told him that the child had
fallen in the tub and down the stairs, and had been unconscious at one point, but
emergency help was not sought because the child appeared to be “okay” after CPR
was performed. White believed that abuse was involved and contacted the police.
          Police initially questioned appellant and DeMario concerning Joivonni’s
injuries. Both reiterated that Joivonni had fallen in the bathtub. However, appellant
and DeMario were interviewed a second time after autopsy results showed that
Joivonni had multiple new and old injuries and severe head injuries. After the second
interviews did not produce a more plausible explanation for the child’s injuries,
police contacted the district attorney’s office. Appellant was indicted by a grand jury
for capital murder for intentionally and knowingly causing Joivonni’s death by use
of a deadly weapon. Appellant was also charged in a separate indictment for serious
bodily injury to a child by omission. Police went to appellant’s house with an arrest
warrant and eventually found appellant and DeMario hiding in the attic.
          At trial, appellant moved to require the State to elect between the indictments
for capital murder and serious bodily injury by omission. She also requested a jury
instruction on injury to a child as a lesser-included offense of capital murder. The
trial court denied appellant’s requests and the jury convicted appellant as charged in
both indictments. Because the State did not seek the death penalty, punishment for
capital murder was automatically assessed at life imprisonment. Punishment for
injury to a child was also assessed at life imprisonment. 
Double Jeopardy
          As part of her appeal of her conviction for serious bodily injury to a child by
omission, appellant contends that the trial court erred by allowing both the indictment
for serious bodily injury to a child by omission and the indictment for capital murder
to proceed to trial at the same time. Appellant argues that serious bodily injury to a
child by omission is a lesser-included offense of capital murder, and that her
constitutional right against double jeopardy was violated by the trial court’s failure
to require the State to elect between the indictments.  
          The Double Jeopardy Clause of the United States Constitution provides that no
person shall be subjected to twice having life or limb in jeopardy for the same
offense. U.S. Const. amend. V. Generally, this clause protects against (1) a second
prosecution for the same offense after acquittal, (2) a second prosecution for the same
offense after conviction, and (3) multiple punishments for the same offense. Brown
v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex parte Herron, 790
S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh’g).
          To determine whether both offenses are the same, we must examine the
elements of the applicable statutes to determine whether each statute “requires proof
of an additional fact which the other does not.” Blockburger v. United States, 284
U.S. 299, 304, 52 S. Ct. 180, 182 (1932); see United States v. Dixon, 509 U.S. 688,
696, 113 S. Ct. 2849, 2856 (1993); Parrish v. State, 869 S.W.2d 352, 353–55 (Tex.
Crim. App. 1994). Greater- and lesser-included offenses are the same offense for
double jeopardy purposes. Parrish, 869 S.W.2d at 354.
          Injury to a child by omission is not a lesser-included offense of capital murder 
because the two offenses have different elemental requirements. See, e.g., Johnson
v. State, 234 S.W.3d 43, 54 (Tex. App.—El Paso 2007, no pet.). For example, capital
murder requires no special relationship with the victim, while injury to a child by
omission requires the actor to have a legal or statutory duty to act or to have care,
custody, or control of the victim. Compare Tex. Pen. Code Ann. § 19.03(a)(8)
(Vernon 2005) (capital murder defined as intentionally or knowingly causing the
death of an individual under six years of age) with § 22.04(b)(1), (b)(2) (Vernon
2005) (serious bodily injury to a child by omission defined as causing, by omission,
serious bodily injury to a child of whom a person has assumed care, custody or
control, or if the person has a legal or statutory duty to act). Similarly, capital murder
requires the death of the child, while injury to a child by omission does not. Id.
Accordingly, the trial court’s decision to allow both indictments to proceed to trial
at the same time did not violate appellant’s constitutional right against double
jeopardy.
Charge Error
          Appellant challenges her conviction for capital murder by arguing that the trial
court erred by not charging the jury on the offense of injury to a child by intentional,
knowing, or reckless act.
          We use a two-pronged test to determine whether a defendant is entitled to an
instruction on a lesser-included offense. See Guzman v. State, 188 S.W.3d 185, 188
(Tex. Crim. App. 2006). The first step is to determine whether an offense is a lesser-included offense of the alleged offense. Hall v. State, 225 S.W.3d 524, 535 (Tex.
Crim. App. 2007). The determination of whether the offense for which an instruction
was requested is a lesser-included offense of the alleged offense is a question of law
and does not depend on the evidence to be produced at the trial. Id. at 535. The
second step is to determine if there is some evidence that would permit a rational jury
to find that the defendant is guilty of the lesser offense but not guilty of the greater. 
Id. at 536; Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). If more
than a scintilla of evidence from any source raises the issue that the defendant is
guilty only of the lesser included offense, the instruction must be submitted. Forest
v. State, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999).
          An appellant must satisfy both prongs to be entitled to a lesser-included offense
instruction. Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). If there is
no evidence that appellant is guilty only of the lesser offense, it is unnecessary to
determine whether the lesser offense is a lesser-included offense.        
          In reviewing the evidence, we first note the Court of Criminal Appeals’
admonition that, “if a defendant either presents evidence that he committed no offense
or presents no evidence, and there is no evidence otherwise showing that he is guilty
only of a lesser-included offense, then a charge on a lesser-included offense is not
required.” Bignall, 887 S.W.2d at 24. There must be affirmative evidence in the
record raising the lesser offense before an instruction is warranted. Id. 
          Here, there were no witnesses to the alleged offense and appellant repeatedly
denied committing any act that harmed Joivonni, and denied any knowledge of 
DeMario harming the child. Instead, both appellant and DeMario gave police and
emergency personnel various accounts of how Joivonni might have sustained his
injuries—including slipping in the bathtub, falling from the ledge of the bathtub,
falling down the stairs and/or an unexplained accident while appellant and DeMario
were outside mowing the lawn. Appellant’s testimony that she did not commit any
offense cannot support a lesser-included offense instruction. See, e.g., Lofton v. State,
45 S.W.3d 649, 652 (Tex. Crim. App. 2001); Martin v. State, 246 S.W3d 246, 267
(Tex. App.—Houston [14th Dist.] 2007, no pet.). Appellant’s evidence, if believed
by the jurors, would have supported only an acquittal, not a conviction for the lesser
included offense of injury to a child. 
          Despite her denials that she committed any act that caused Joivonni’s injuries,
appellant now argues on appeal that the medical evidence presented at trial by the
State is sufficient to allow a jury to find that if appellant were guilty, “she was guilty
only of acting recklessly” with the intent to cause serious injury. We disagree. In
this case, the medical testimony regarding the extensive nature of Joivonni’s injuries
and the manner in which they were inflicted does not constitute more than a scintilla
of evidence that Appellant was merely reckless and that she only intended to cause
serious injury and not death to Joivonni.
          The medical examiner who performed the autopsy on Joivonni’s body opined
that the fatal head injuries Joivonni sustained could only have occurred by a
“shaking-impact injury,” where the two-year-old child’s head was shaken back and
forth with such incredible energy that parts of the brain were moving in different
directions and the eyes were hemorrhaging, and then his head was hit with or against
something. The medical examiner specifically stated that the type of brain injuries
Joivanni sustained were not from a simple fall from a bathtub or even down stairs, but
were instead the type sustained when a child is shaken very hard and then thrown into
an object such as a wall or a bathtub at a high speed. Additionally, the medical
examiner testified that the person who inflicted these injuries must have intended to
cause the injuries. Because appellant denied harming Joivonni in any way and the
medical evidence shows conduct that could only have been done intentionally or
knowingly, nothing in the record would support a jury finding of reckless serious
bodily injury. 
          Similarly, appellant contends on appeal that the medical evidence presented at
trial by the State is sufficient to allow a jury to find that if appellant were guilty, she
was guilty only of intentionally or knowingly causing serious bodily injury, as
opposed to capital murder. As shown above, the medical evidence shows only that
appellant acted intentionally or knowingly to cause the death of the child, and thus
the only question remaining is whether there is any evidence that appellant
intentionally or knowingly intended to cause serious bodily injury but not death. Our
review of the record shows that the medical examiner testified that the injuries to the
child satisfy the definition of serious bodily injury and also that appellant caused the
death of the child. The definition of serious bodily injury includes death. Tex. Pen.
Code Ann. § 1.07(a)(46) (Vernon 2003). However, to be entitled to an instruction
on the lesser offense, the evidence must show guilt for only the lesser included
offense. See Bignall, 887 S.W.2d at 23. Although death is included in the definition
of serious bodily injury, no evidence shows that appellant was guilty of the lesser
offense of acting with intent to cause only serious bodily injury and not death. In
other words, proof that appellant intentionally or knowingly intended to cause the
death of the child will as a matter of law always establish that appellant intentionally
or knowingly intended to cause serious bodily injury to the child, and therefore a
lesser included offense instruction should not be given under these circumstances. 
See id.
          We conclude that there is not more than a scintilla of evidence that appellant
was guilty only of the lesser offense of injury to a child and not the greater offense
of capital murder. Accordingly, we hold that appellant was not entitled to an
instruction on the lesser-included offense of serious bodily injury to a child by
intentional, knowing or reckless act, and the trial court did not err in rejecting
appellant’s request for this instruction. 
Legal and Factual Sufficiency
          Appellant also contends that the evidence is legally and factually insufficient
to prove that she is guilty of either capital murder or serious bodily injury to a child
by omission.
          In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime’s essential elements beyond a reasonable doubt. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). In our factual-sufficiency review, we view all
of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997). We will set aside the verdict only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the proof of guilt is against the
great weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11. Under
the first prong of Johnson, we cannot conclude that a conviction is “clearly wrong”
or “manifestly unjust” simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d
404, 414–15 (Tex. Crim. App. 2006). Under the second prong of Johnson, we also
cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury’s resolution of that conflict. Id. at 415, 417. Before finding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
our factual-sufficiency review, we must also discuss the evidence that, according to
the appellant, most undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).
          The fact-finder alone determines the weight to be given contradictory
testimonial evidence because that determination depends on the fact-finder’s
evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408–09. As the
determiner of the credibility of the witnesses, the fact-finder may choose to believe
all, some, or none of the testimony presented. Id. at 407 n.5; see also Lancon v. State,
253 S.W.3d 699, 707 (Tex. Crim. App. 2008).
          Capital Murder
          As charged, to prove that appellant committed the offense of capital murder,
the State had the burden of proving beyond a reasonable doubt that appellant
intentionally or knowingly caused the death of an individual under six years of age. 
See Tex. Pen. Code Ann. §§ 19.02(b)(1); 19.03(a)(8). The jury charge indicated that
the jury could convict appellant if it found she either acted by her own conduct or as
a party to DeMario or both. 
           Appellant argues that the evidence against her is “entirely circumstantial”
because no one actually saw her harm the child, and because she was not the only
person with access to Joivonni at the time he was injured. Appellant points to the
medical examiner’s statements that brain injuries may sometimes result from falls and
his admission that he could not identify the object or objects which might have been
used to injure Joivonni. Accordingly, appellant contends that the evidence is legally
and factually insufficient to sustain her conviction for capital murder. We disagree. 
          Legal and factual sufficiency do not require that each fact point directly and
independently to the defendant’s guilt; rather, the verdict will withstand a sufficiency
challenge as long as the combined and cumulative force of all the circumstances
permits the conclusion that the jury was rationally justified in finding the defendant
guilty of each element of the crime beyond a reasonable doubt. Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993); see also Sonnier v. State, 913 S.W.2d
511,514-16 (Tex. Crim. App. 1995). Further, circumstantial evidence can be
sufficient to prove culpable mental state; in these types of injury to a child cases,
there is rarely direct evidence of exactly how the child’s injuries occurred, which is
why the culpable mental state may be inferred from circumstantial evidence. See
Ledesma v. State, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984).
          Here, the medical examiner’s testimony shows that the head injuries which
caused Joivonni’s death were extensive, that they could not have been inflicted in any
of the several ways appellant offered as explanation, and that they instead must have
been sustained during an episode of violent shaking and physical abuse by an adult. 
The evidence also shows that appellant admitted being alone with Joivonni at several
periods during the time the medical examiner testified that Joivonni sustained the
injuries that caused his death. Finally, the medical examiner testified that the person
who inflicted these injuries would have known that they were seriously harming
Joivonni and must have intended to do so. Accordingly, we conclude that, viewing
the evidence in the light most favorable to the verdict, a rational trier of fact could
have found the essential elements of capital murder beyond a reasonable doubt. 
Johnson, 23 S.W.3d at 11. Similarly, the evidence, viewed in a neutral light, is not
so weak that the verdict is clearly wrong and manifestly unjust and is, thus, factually
sufficient to sustain the jury’s finding of guilt on the charge of capital murder. Id.           Serious Bodily Injury to a Child by Omission
          As charged, to prove that appellant committed the offense of serious bodily
injury to a child by omission, the State had the burden of proving beyond a reasonable
doubt that appellant, by her omission, knowingly caused serious bodily injury to
Joivonni by failing to seek and provide timely and necessary medical attention to
Joivonni, and that appellant had a legal duty to act. See Tex. Pen. Code Ann. §
22.04(a), (b)(1). The jury charge indicated that the jury could convict appellant if it
found she either acted by her own conduct or as a party to DeMario or both. 
          Injury to a child by omission is a “result of conduct” offense. Alvarado v.
State, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985). This means that the culpable
mental state relates not to the nature or circumstances surrounding the charged
conduct, but to the result of that conduct. Thompson v. State, 227 S.W.3d 153, 159
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). In other words, the accused must
have acted with the requisite culpable mental state to effect the result. Id.
          As with her conviction for capital murder, Appellant claims that the evidence
is legally insufficient to support her conviction for serious bodily injury by omission
because the evidence against her is entirely circumstantial, no witnesses saw her
shake or strike Joivonni, and she did not have sole access to the child at the time his
injuries were sustained. She also asserts that the record shows that she made
consistent statements regarding the cause of Joivonni’s injuries. Therefore, she
claims that no rational jury could have found the elements of serious bodily injury to
child by omission beyond a reasonable doubt. We disagree. 
          Here, the medical examiner testified that—immediately after Joivonni
sustained his injuries—he would not have been acting normally and he would have
“immediately [had] symptoms and signs that anyone could notice that something’s
wrong with the kid.” The medical examiner also testified that, without medical
treatment, Joivonni was certain to die from his injuries. Witnesses testified that
appellant brought an unconscious Joivonni to Christian’s house and was told that the
child needed medical treatment, but instead she returned with the child to her house. 
The paramedic testified that he found Joivonni’s bruised body, which exhibited rigor
mortis, on the floor of appellant’s house the following day; appellant was in the
house. The paramedic also testified that he was told the child had slipped in the tub
and/or fallen down the stairs, and had even lost consciousness at one point the prior
evening, but that no medical treatment had been sought. 
          We conclude that, viewing the evidence in the light most favorable to the
verdict, a rational trier of fact could have found the essential elements of serious
bodily injury to a child by omission beyond a reasonable doubt. Johnson, 23 S.W.3d
at 11. Therefore, there is legally sufficient evidence to support the jury’s verdict that
appellant caused serious bodily injury to Joivonni by omission. 
          Similarly, we conclude that the evidence is factually sufficient to support the
jury’s conviction. Appellant apparently relies on Christian’s testimony that he saw
Joivonni playing normally on the day of the incident and that Joivonni only had a
small bruise on his arm when he was brought to Christian’s house as evidence that
negated whether appellant knew that Joivonni needed medical attention, and,
therefore, knowingly caused his death by omission. However, Christian also stated
that when Joivonni was brought to his house that evening, he was unconscious. The
medical examiner testified that it would be reasonable to assume that any period when
Joivonni was acting normally would have occurred before he sustained his head
injury. Additionally, another witness testified that Joivonni was covered in bruises
when brought to Christian’s house and not breathing, and that appellant was urged
to call 911 or take Joivonni to the emergency room. Any conflict in the testimony
concerning the severity, extent, and cause of Joivonni’s injuries when brought to
Christian’s house was for the jury to resolve. See Cain, 958 S.W.2d at 408–09.


 
          We hold that the evidence, viewed in a neutral light, is not so weak that the
verdict is clearly wrong and manifestly unjust and is, thus, factually sufficient to
sustain the jury’s finding of guilt on the charge of serious bodily injury to a child by
omission. 
Admission of Autopsy Photograph
          In her fourth point of error, appellant complains that the trial court erred in
admitting an autopsy photograph. Appellant contends that the photograph was
irrelevant, cumulative, and unfairly prejudicial. At trial, appellant only objected that
State’s exhibit 2TT was irrelevant and cumulative; therefore, we only consider her
trial challenge to exhibit 2TT, and do not consider her argument that the photograph
is unfairly prejudicial. See Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002) (point of error on appeal must comport with objection made at trial).
          We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). 
A trial court’s ruling will not be reversed unless it falls outside the zone of reasonable
disagreement. Id.
          Relevant evidence is evidence having any tendency to make the existence of
a fact that is of consequence to the outcome of the case more or less probable than it
would be without the evidence. Tex. R. Evid. 401. In other words, evidence must
satisfy two requirements in order to be relevant—materiality and probativeness. Cruz
v. State, 122 S.W.3d 309, 312 (Tex. App.—Houston [1st Dist.] 2003, no pet.). 
          Relevant evidence is generally admissible under Texas Rule of Evidence 402;
however, the admission of potentially prejudicial evidence is governed by Rule 403.
Tex. R. Evid. 402, 403. In determining whether potentially prejudicial evidence was
properly admitted, the appropriate inquiry is not whether the evidence was more
prejudicial than probative, but rather, whether the probative value was substantially
outweighed by the danger of unfair prejudice or needless presentation of cumulative
evidence. Resendiz v. State, 112 S.W.3d 541, 545 (Tex. Crim. App. 2003). In the
balancing analysis, however, there is a presumption favoring probative value over
unfair prejudice or cumulative effect. See Goldberg v. State, 95 S.W.3d 345, 366
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).
          Appellant first argues that exhibit 2TT


 is irrelevant because it is not probative
of the manner in which Joivonni incurred his fatal injuries. Exhibit 2TT depicts
various injuries to Joivonni’s neck and the side of his head. The medical examiner
who performed the autopsy on Joivonni’s body stated that photographs of Joivonni’s
body before and during the autopsy would assist him in describing his findings to the
jury. Generally, a photograph is admissible if verbal testimony as to matters depicted
in the photographs is also admissible. Gallo v. State, 239 S.W.3d 757, 762 (Tex.
Crim. App. 2007). In other words, if verbal testimony is relevant, photographs of the
same are also relevant. Id. The medical examiner’s testimony was material to the
State’s serious bodily injury to child by omission case because it is probative of the
child’s condition at the time appellant brought the child to Christian’s house. The
medical examiner’s testimony was material to the State’s capital murder case because
it demonstrated the scope and extent of the child’s injuries and the cause of death. 
We hold that the trial court did not abuse its discretion in determining that the
photograph was relevant. See Tex. R. Evid. 401.
          Next, appellant asserts that the probative value of exhibit 2TT is outweighed
by the needless presentation of cumulative evidence. See Tex. R. Evid. 403. She
appears to assert that the photograph was cumulative of State’s exhibits 2RR and 2SS. 
However, exhibit 2TT is not cumulative of these exhibits, because exhibit 2TT shows
injuries to Joivonni’s neck and head from a side view, whereas exhibits 2RR and 2SS
show injuries from a frontal view. Accordingly, we hold that the trial court did not
abuse its discretion in deciding that the photograph’s probative value was not
substantially outweighed by the needless presentation of cumulative evidence. Exclusion of Expert Testimony
          In her final point of error, appellant contends that the trial court reversibly
erred in excluding the psychiatric testimony of Dr. Ernest Kendrick during the
guilt/innocence stage of trial. Appellant contends that she offered Dr. Kendrick’s
testimony to explain her decision-making process at the time of the offense. At trial,
appellant argued that Dr. Kendrick’s testimony is relevant because it went to her state
of mind at the time the child needed medical attention at Christian’s house. Appellant
explained that she hired Dr. Kendrick to analyze the evidence and determine whether
“the perception of the omission of treatment was a legitimate perception on
[appellant’s] part.” She further expressed, “I’m offering it for the state of mind of
[appellant] at the time to determine based upon the explanation[s] that she gave and
the testimony of the other witnesses. Was it or is it a rational belief that medical care
was necessary at that time?” From the context of the questioning, it appears that
appellant was attempting to rebut the charge of serious bodily injury by omission by
offering the testimony as evidence of whether she perceived that Joivonni needed
medical attention when she brought him to Christian’s house. Appellant does not
explain how Dr. Kendrick’s testimony would have been relevant to the capital murder
case against her. 
          Even if the the trial court abused its discretion in refusing to admit Dr.
Kendrick’s testimony, we conclude that such error would have been harmless. Any
error in excluding evidence in this case would be non-constitutional error under Rule
44.2(b). Accordingly, we must disregard the error and affirm if the error did not
affect appellant’s substantial rights. Tex. R. App. P 44.2(b); King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). “A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the jury’s
verdict.” King, 953 S.W.2d at 271. “A criminal conviction should not be overturned
for non-constitutional error if the appellate court, after examining the record as a
whole, has fair assurance that the error did not influence the jury, or had but a slight
effect.” Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.1998).
          Examining the record as a whole, the evidence shows that, when appellant
brought Joivonni to Christian’s house, the child was unconscious—possibly not
breathing or breathing with difficulty—and appellant was crying and screaming
“[T]he baby wouldn’t wake up.” Bystanders told appellant that the child needed
medical attention and even offered to take appellant and the child to the hospital. 
Appellant declined; one witness testified that appellant responded that she already
had someone coming and another witness testified that appellant stated that she was
going to go home and call 911. Given the weight of the testimony showing that
appellant knew that Joivonni needed immediate medical attention, we hold that any
error the trial court’s committed in not admitting Dr. Kendrick’s testimony was
harmless and did not affect appellant’s substantial rights. 
Conclusion
          We affirm appellant’s convictions for capital murder and serious bodily injury
to a child by omission. 
                                                                         
 
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Alcala, Hanks and Nuchia.




Publish. Tex. R. App. P. 47.2(b)