Opinion issued October 1, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00582-CR

____________


JOHN PAUL MCINTOSH, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 434th District Court

Fort Bend County, Texas

Trial Court Cause No. 46,344






O P I N I O N


 Under Texas Rule of Appellate Procedure 50, we withdraw our July 23, 2009
opinion, substitute this opinion in its place, and vacate our July 23, 2009 judgment. (1) A jury found appellant, John Paul McIntosh, guilty of the offense of burglary
of a habitation, (2) and the trial court, after finding true the allegation in one
enhancement paragraph that appellant had one prior felony conviction, assessed his
punishment at confinement for ten years. In three points of error, appellant contends
that the evidence is legally and factually insufficient to support his conviction and that
the trial court, in its charge, erroneously instructed the jury on the law of burglary of
a habitation, the lesser-included offense of criminal trespass, and the facts regarding
mistake of fact.

 We affirm.

Factual Background

 Fort Bend County Sheriff's Deputy V. Garcia testified that on February 26,
2007, he was dispatched to the home of the complainant, Maria Alcantar. Upon his
arrival, the complainant, in a recorded statement, told Garcia that she lived in the home
with her parents, siblings, and daughter. She also told Garcia that appellant, the father
of her three-year-old daughter, had broken into the house through the kitchen window
and kicked in the door of the bathroom, where she had been hiding with her daughter
and her younger sister, Daisy Alcantar ("Alcantar"). 

 Alcantar testified that on February 26, 2007, she stayed home from school
because she "had a pink eye." That morning, she heard appellant knocking on the
front door, and then he went around to the back door. The complainant did not want
to open the door for him, so Alcantar and the complainant and her daughter hid in the
bathroom, locked the bathroom door, and called for emergency assistance. From the
bathroom, Alcantar heard appellant break the kitchen window. Then, when appellant
broke open the bathroom door, Alcantar began "panicking." When he entered the
bathroom, appellant said, "I thought there was another dude in here" and looked
around the house before leaving. Alcantar explained that appellant is "pretty jealous." 
She described appellant as "a jealous guy," who would be angry if he found out that
the complainant was dating someone else. 

 The complainant testified that she had been in a dating relationship with
appellant for seven years but that there had "been times when [they had not] been
dating." Prior to February 26, 2007, they had ended their relationship, and the
complainant was "scared" when she heard someone knocking on the front door. The
complainant took her daughter and Alcantar to the master bathroom, where they
waited for about ten minutes until the knocking stopped. She then heard appellant in
the backyard yelling, "Maria, open the door. I know you're in there because I hear
[our daughter] yelling and screaming." The complainant "panicked," ran to the front
bathroom with her sister and daughter, and locked the bathroom door. When she
heard appellant break the kitchen window, she was frightened. She explained that
appellant then walked to the bathroom door and "kicked the door in." When the State
played a tape recording of her statement to Officer Garcia that appellant would have
"killed her" if he had found her with "another guy," the complainant stated that she
had "exaggerated."

 Harris County Sheriff's Deputy R. Delano testified that on June 14, 2006, he
was dispatched to interview the complainant about an incident that had occurred the
previous evening. The complainant told Delano that appellant had arrived at her
house, told her to get into his car, and drove her to a barber shop, where he "made her
go inside" and "closed and locked the door behind them." After he had locked the
door, appellant started drinking alcoholic beverages until he became intoxicated and
fell asleep. The complainant tried to wake him up and "get him to take her home," but
when he woke up around midnight "he became angry with her, and he struck her one
time on the left side of her face." Finally, sometime around 7:30 a.m., appellant
allowed her to leave. When Delano interviewed the complainant, she "had a swollen
nose, the left side of her face was swollen," and he saw "blood on her clothes."

 Appellant testified that he went to the complainant's house on February 26,
2007 because he had heard that there were "some people after" the complainant's
brother. After knocking on the door, ringing the doorbell, and calling the complainant
on his cellular telephone without getting any response, appellant went to the back of
the house because he thought that the back door might be unlocked. When he "got
back there, [appellant] heard his daughter crying and screaming," so "[w]ithout
hesitation, [he] broke the window" and entered the house. Appellant "thought
something was going on, thought something was wrong." Finding the bathroom door
locked, appellant "[s]houldered the door in." Regarding Delano's testimony that the
complainant had stated that appellant had previously taken her to a barber shop and
struck her face, appellant stated that he could not dispute the statement because he
"was drunk" and could not remember what had happened. On cross-examination,
appellant agreed that he would have "been really angry" if the complainant had been
in the house with another man and that he is "a jealous guy." He explained that he left
the house because he saw Alcantar "on the phone, and [he] had a warrant for [his]
arrest." 

Sufficiency of the Evidence

 In his first point of error, appellant argues that the evidence is legally
insufficient to support his conviction because he "lacked the requisite mental state to
intend to commit assault against the complainant." In his second point of error,
appellant argues that the evidence is factually insufficient to support his conviction
because the "evidence of intent to commit assault is so weak as to undermine . . .
confidence in the jury's determination."

 We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)). In doing so, we
give deference to the responsibility of the fact-finder to fairly resolve conflicts in
testimony, to weigh evidence, and to draw reasonable inferences from the facts. Id. 
However, our duty requires us to "ensure that the evidence presented actually supports
a conclusion that the defendant committed" the criminal offense of which he is
accused. Id. 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We note
that a jury is in the best position to evaluate the credibility of witnesses, and we afford
due deference to the jury's determinations. Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006). Although we should always be mindful that a jury is in the
best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is "the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d at 416-17. Thus,
when an appellate court is "able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial." Id. at 417.

 An individual commits the offense of burglary of a habitation if, without the
effective consent of the owner, he enters a habitation with the intent to commit an
assault. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). A person commits the
offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to
another or if he intentionally or knowingly threatens another with imminent bodily
injury. Id. § 22.01(a)(1), (2). Juries may infer intent from a defendant's conduct and
the surrounding facts and circumstances. Lapoint v. State, 750 S.W.2d 180, 182 (Tex.
Crim. App. 1986); McGee v. State, 923 S.W.2d 605, 608 (Tex. App.--Houston [1st
Dist.] 1995, no pet.). 

 Regarding the legal sufficiency of the evidence, appellant admitted that he broke
a window to gain entry into the complainant's house when no one would open the
door and, finding the bathroom door locked, broke the door to get into the bathroom. 
Appellant admitted that he would have been angry if another man had been in the
house with the complainant, and Alcantar testified that appellant said, "I thought there
was another dude in here," after he broke into the bathroom. Deputy Delano testified
that appellant had assaulted the complainant in the past. Viewed in the light most
favorable to the verdict, the evidence supports the jury's finding that appellant entered
the house with the intent to assault the complainant. Accordingly, we hold that the
evidence is legally sufficient to support appellant's conviction.

 In support of his argument that the evidence is factually insufficient to support
his conviction, appellant relies on the fact that the complainant "never testified to
being assaulted or being in fear of imminent assault from [a]ppellant." However, there
is evidence that the complainant feared an imminent assault from appellant. Deputy
Garcia recorded the complainant's statement in which she said that if appellant
thought there was another man in the house with her, she believed "he would have
killed [her]." Additionally, after recognizing appellant's voice, the complainant
testified that she was frightened and locked herself in the bathroom. Nevertheless,
even if the complainant did not fear an imminent assault, the jury could have found
either that appellant intended to cause bodily injury to the complainant or that he
intended to threaten the complainant with imminent bodily injury by inferring
appellant's intent from the surrounding facts and circumstances that are discussed in
the previous paragraph. See Lapoint, 750 S.W.2d at 182; McGee, 923 S.W.2d at 608. 
Appellant did not dispute any of the facts discussed above except for Alcantar's
testimony that he had said, "I thought there was another dude in here," and he testified
that he did not intend to assault the complainant. Nevertheless, the jury was free to
disbelieve appellant's testimony. See Marshall, 210 S.W.3d at 625 (requiring
appellate courts to defer to jury determinations of credibility). 

 We conclude that the evidence is not so obviously weak as to make the jury's
verdict clearly wrong and manifestly unjust, nor is the proof of guilt against the great
weight and preponderance of the evidence. Accordingly, we hold that the evidence
is factually sufficient to support appellant's conviction.

 We overrule appellant's first and second points of error.

Jury Charge

 In his third point of error, appellant argues that he suffered egregious harm in
the guilt phase of the trial because the trial court, in the application portion of its
charge, did not explain to the jury that it was required to determine whether appellant
intentionally or knowingly entered the habitation with intent to commit assault,
instruct the jury on the elements of the lesser-included offense of criminal trespass,
and "properly set out those facts adduced at trial in its application paragraph applying
the law of mistake of fact."

 The trial court prepared the charge and submitted it to counsel for both parties. 
The application portion of the charge reads as follows:

 Now, if you find from the evidence beyond a reasonable doubt that
on or about February 26, 2007, in Fort Bend County, Texas, the
defendant, JOHN PAUL MCINTOSH, did enter a building then and there
owned, occupied or used as a habitation by Maria Alcantar, without the
effective consent of the Maria Alcantar, with the intent to assault, then
you will find the defendant guilty as charged.

 

 Unless you so find beyond a reasonable doubt, or if you have
reasonable doubt thereof, you will acquit the defendant and say by your
verdict "Not Guilty" and consider the lesser included offense of criminal
trespass.


 Now, if you find from the evidence beyond a reasonable doubt that
on or about February 26, 2007 in Fort Bend County, Texas, the
defendant, John Paul Mcintosh [sic] did intentionally or knowingly did
[sic] enter a building then and there owned, occupied or used as a
habitation by Maria Alcantar, without the effective consent of the [sic]
Maria Alcantar, then you will find the defendant guilty of the lesser
included offense of criminal trespass. Unless you so find beyond a
reasonable doubt, or if you have a reasonable doubt thereof, you will
acquit the defendant and say by your verdict "Not Guilty."


 You are instructed that it is a defense to prosecution that a person
through mistake formed a reasonable belief about a matter of fact if her
[sic] mistaken belief negated the kind of culpability required for
commission of the offense charged.


 By the term "reasonable belief" is meant a belief that would be
held by an ordinary and prudent person in the same circumstances as the
defendant.

 

 Therefore, if you believe from the evidence that on the occasion in
question the defendant, JOHN PAUL MCINTOSH through mistake,
formed a reasonable belief and did believe that Maria Alcantar was held
hostage by another person and JOHN PAUL MCINTOSH believed that
his entry was solely for that purpose, or if you have a reasonable doubt
thereof, then you will find the defendant not guilty of burglary of a
habitation with the intent to commit assault.

 

 Although the defendant's alleged mistake of fact may constitute a
defense to the offense charged--burglary of a habitation with intent to
commit assault--he may nevertheless be convicted of a lesser included
offense of which he committed if the fact was as he believed.

 At the charge conference, appellant's trial counsel stated, "[W]e have no
requested further charges, nor do we have any objections to the charge as it stands
right now. The State has added what we requested, the lesser included offense of
criminal trespass and mistake of fact, and we're satisfied with the charge as it stands."

 The trial court must instruct the jury by "a written charge distinctly setting forth
the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon
2007). When reviewing alleged errors in a trial court's charge, we must first
determine whether error actually exists in the charge, and, if error does exist, we must
determine whether sufficient harm resulted from the error to require reversal. Abdnor
v. State, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). When, as here, a defendant
fails to object or states that he has no objection to a charge, an error in the charge does
not require reversal unless the record shows "egregious harm" to the defendant. Id.
at 731-32; see also Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Bluitt v.
State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984). Egregious harm exists when the record shows that a
defendant has suffered actual, rather than merely theoretical, harm from jury-charge
error. Almanza, 686 S.W.2d at 174. Egregious harm consists of error affecting the
very basis of the case or depriving the defendant of a valuable right, vitally affecting
a defensive theory, or making the case for conviction or punishment clearly and
significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim.
App. 1991); Martinez v. State, 190 S.W.3d 254, 259 (Tex. App.--Houston [1st Dist.]
2006, pet. ref'd). To determine whether a defendant has sustained harm from a non-objected-to instruction, we consider (1) the entire charge, (2) the state of the evidence,
(3) arguments from counsel, and (4) any other relevant information. Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 

Appellant's Intent

 Appellant first complains that "the application paragraph does not incorporate
or refer to any culpable mental state for the offense of burglary of [a] habitation with
intent to commit assault." He asserts that "the jury was left with nothing but inference
because there was no requirement to find [that] [a]ppellant intentionally or knowingly
entered the habitation of [the complainant], with the intent to commit assault, in the
application paragraph of the charge."

 Regarding the intent to assault, the charge expressly states that the jury had to
find that appellant entered the complainant's house "with the intent to assault" in order
to find him guilty of the offense of burglary of a habitation. Based on this language,
the jury was required to find that appellant entered the house with the intent to commit
the offense of assault. 

 It is true that the application paragraph does not include the word
"intentionally" or "knowingly" before the word "enter." Rather, it instructed the jury
to find appellant guilty of the offense of burglary if he "did enter" the house "with the
intent to assault." (3) In order to establish the commission of the offense of burglary of
a habitation, the evidence must show "that the entry was either knowingly or
intentionally done." Devaughn v. State, 749 S.W.2d 62, 64 n.3 (Tex. Crim. App.
1988). However, this "general culpable mental state is subsumed into the specific
intent to commit a felony, theft, or assault." Id.; Martinez v. State, 269 S.W.3d 777,
781-82 (Tex. App.--Austin 2008, no pet.). 

 Appellant makes the same complaint made by the defendant in Sylvester v.
State, 615 S.W.2d 734, 735 (Tex. Crim. App. 1981). There, the defendant complained
that the "charge [regarding burglary] was fatally defective and fundamentally
erroneous in that it did not include an instruction on the required culpable mental
state." Id. The jury was instructed that

they must find from the evidence beyond a reasonable doubt that the
accused did enter a building not then open to the public, occupied,
controlled, and in the possession of the complainant, owner, without the
effective consent of said owner, with the intent then and there to commit
theft, "then you will find the defendant guilty as charged." Unless they
did so find beyond a reasonable doubt, they were instructed to find the
defendant not guilty.


Id. n.2. The court, citing to Teniente v. State, 533 S.W.2d 805, 805 (Tex. Crim. App.
1976), held the charge sufficient because it required the jury to find the requisite
culpable mental state to sustain the conviction, that mental state being entry "with the
intent then and there to commit theft." Id. at 736; see also Smith v. State, 642 S.W.2d
253 (Tex. App.--Houston [14th Dist.] 1982, pet. ref'd, untimely filed). 

 In Teniente, the defendant complained that the indictment for burglary did not
contain the element of culpability required by the Penal Code. 533 S.W.2d at 805. He
asserted that the indictment should have contained the element that the entry be
"knowingly and intentionally done." Id. The application paragraph of the indictment
read "did then and there, with intent to commit theft, enter a habitation without the
effective consent of [the complainant], the owner." Id. at 805-06. The court held that
"[t]he indictment alleges the culpable mental state with which the appellant entered
the habitation; it alleges he entered the habitation 'with the intent to commit theft.'" 
Id. at 806. The court later explained its holding in Ex parte Santellana: "The gist of
burglary was held in Teniente to be the entry . . . . Since the alleged intent . . . clearly
applied to the act constituting the gist of the offense, the indictment[] [was] held
sufficient." 606 S.W.2d 331, 332-333 (Tex. Crim. App. 1980).

 Here, as in the charge in Sylvester and in the indictment in Teniente, both the
instruction paragraph and the application paragraph included the element of
appellant's culpable mental state. In order to find appellant guilty, the jury was
required to find that appellant entered the house "with the intent to assault." 
Accordingly, we hold that the jury was properly instructed on the law of burglary, and
the application paragraph regarding burglary contained the required culpable mental
state and is, therefore, not deficient.

Elements of Criminal Trespass

 Appellant next complains that the trial court, in its charge, did not "provide
jurors with the law on criminal trespass such that they could consider [a]ppellant's
guilt of the lesser included offense." 

 An individual commits the offense of criminal trespass if he "enters or remains
in a building of another without effective consent" when he "had notice that the entry
was forbidden" or "received notice to depart but failed to do so." Tex. Penal Code
Ann. § 30.05(a) (Vernon 2003).

 Here, the trial court did not include a definition of criminal trespass in the first
section of the charge, but it did refer to the offense of criminal trespass in the
application paragraph. However, this reference did not instruct the jury that in order
to find appellant guilty of the offense of criminal trespass it had to find that appellant
either had notice that entry was forbidden or had received notice to depart and failed
to do so. See id. Although the charge is deficient for not including this element of the
lesser-included offense, it is not deficient in any way that would prejudice appellant's
rights. See Martin v. State, 200 S.W.3d 635, 642 (Tex. Crim. App. 2006).

 If the jury had convicted appellant of criminal trespass without being required
to find all the elements of the offense, appellant could have been egregiously harmed. 
See Woods v. State, 653 S.W.2d 1, 2 (Tex. Crim. App. 1982). However, the jury
convicted appellant of the greater offense of burglary. The Court of Criminal Appeals
has stated that when a jury finds a defendant guilty of a greater offense, any "errors in
the charge on the lesser included offense, for which the appellant was not convicted,
could not so have misled the jury as to constitute fundamental error." Clark v. State,
717 S.W.2d 910, 918 (Tex. Crim. App. 1986); see also Saunders v. State, 913 S.W.2d
564, 570 (Tex. Crim. App. 1995); Starks v. State, 127 S.W.3d 127, 133 (Tex.
App.--Houston [1st Dist.] 2003, pet. dism'd). Once the jury convicted appellant of
burglary, having been properly charged on that offense, it had no reason to consider
whether appellant might be guilty of the lesser-included offense of criminal trespass. 
See Clark, 717 S.W.2d at 918; Starks, 127 S.W.3d at 133. 

 Moreover, here, the unrefuted evidence conclusively establishes that appellant
entered the house of the complainant by breaking in through the kitchen window. 

 We hold that appellant was not egregiously harmed by the error in the
application paragraph of the charge regarding the lesser-included offense of criminal
trespass.

Mistake of Fact Charge

 Finally, appellant complains that the trial court, in its charge, "improperly
required the jury to find that the only mistaken fact believed by [a]ppellant at the time
of the incident was that he believed that [the complainant] was being held hostage"
when "the evidence at trial revealed that [a]ppellant acted under a mistaken belief that
an emergency existed."

 In its charge, the trial court instructed the jury that it should "find [appellant] not
guilty of burglary" if it found that appellant "formed a reasonable belief and did
believe that [the complainant] was held hostage by another person and [appellant]
believed that his entry was solely for that purpose, or if you have a reasonable doubt
thereof . . . ."

 Appellant testified generally that he entered the house because he thought
"something was wrong." However, his trial counsel then asked him, "When you say
something was wrong, what do you mean by something was wrong?" Appellant
answered, "I thought somebody was holding them, or I didn't even know." 

 In light of appellant's testimony that he thought somebody was "holding them"
we conclude that the mistake-of-fact portion of the jury charge did not vitally affect
a defensive theory of the case. See Saunders, 817 S.W.2d at 692; Martinez, 190
S.W.3d at 259.

 Accordingly, we hold that the record does not show that the jury charge
egregiously harmed appellant.

 We overrule appellant's third point of error.

Conclusion

 We affirm the judgment of the trial court. 


 



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Alcala, and Higley.


Publish. Tex. R. App. P. 47.2(b). 
1. After a party files a petition for discretionary review, an intermediate appellate court
may, within 60 days, reconsider and correct or modify the its opinion. Tex. R. App.
P. 50. If the court modifies its opinion, "[t]he original petition for discretionary
review is not dismissed by operation of law, unless the filing party files a new petition
in the court of appeals." Tex. R. App. P. 50(a). Alternatively, "the petitioning party
shall submit to the court of appeals copies of the corrected or modified opinion or
judgment as an amendment to the original petition." Id. Although Rule 50 expressly
provides that a petitioner may stand on its original petition after the issuance of a
corrected or modified opinion, and although Rule 50 does not contain a specific time
restriction for a party to submit a copy of the corrected or modified opinion as an
amendment to the original petition, the Texas Court of Criminal Appeals has recently
determined that a petitioner that wishes to stand on its original petition must submit
a copy of the corrected or modified opinion to the court of appeals as an amended
petition within 30 days of issuance of the corrected or modified opinion. See Harris
v. State, 287 S.W.3d 785 (Tex. App.--Houston [1st Dist.] 2009, no pet.) (Appellant
timely filed an original petition for discretionary review, but, after this Court
reconsidered and issued a modified opinion, he did not submit a copy of the modified
opinion as an amendment to his petition within 30 days after its issuance; the Court
of Criminal Appeals deemed his petition untimely filed and categorized the case as
having no petition filed.).
2. See Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).
3. Additionally, we note that although appellant now complains about this omission in
the jury charge, appellant testified that he intentionally entered the house by breaking
the kitchen window.