**Thomas Lee STARKS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 01–02–00717–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 16, 2003.

J.C. Carroll, Lambright & Lambright, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Division, Amanda J. Peters, Assistant District Attorney, Houston, TX, for State.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

A jury convicted appellant, Thomas Lee Starks, of aggravated assault. The jury assessed punishment for 35 years confinement. On appeal, appellant contends that (1) the trial court erred by refusing to include a self-defense instruction in the jury charge; (2) the evidence was factually insufficient to support his conviction; (3) the prosecutor made improper jury arguments during the guilt/innocence stage; and (4) the prosecutor improperly commented on appellant's pre-arrest and pre-*Miranda* silence. We affirm.

## Background

William Lee, age 59, and his son Kaaba Lee, age 28, went to the Last Chance Bar in Houston on the night of July 7, 2001. Before going into the bar, William Lee ("Lee") and Kaaba went across the street to the home of Edward Glover, where Glover was cooking and several people they knew had gathered. Lee went into the Last Chance to get a beer while Kaaba stayed at Glover's. When Lee came back to Glover's, a dice game was taking place in Glover's garage. At trial, Lee stated that he, Kaaba, Glover, a man named Big Al, and appellant remained in the garage, although only Kaaba and appellant were playing dice. Lee testified at trial that he and Glover were talking on one side of the garage when appellant told Lee to be quiet. Lee replied that appellant should not tell a grown man to be quiet. At trial, Lee stated that appellant then struck Lee in the face, hitting him in the eyes. After that, Lee only remembered being hit, kicked, and badly beaten. Lee testified that he was eventually able to leave the garage and go into Glover's house, where the beating continued. Lee could not remember anything after the beating. He was in the hospital intensive care unit for four days. Lee stated that the top row of his teeth had been kicked out and that his eyes were swollen for several weeks after the beating.

Officer Tommy Phillips of the Houston Police Department testified that, when he arrived at Glover's home, he saw Lee bleeding from the mouth with swollen eyes and lips and leaning over in the front yard of the house across from Glover's. Because there was so much blood and so much damage had been done to Lee's mouth, Officer Phillips had difficulty understanding the answers Lee gave to Officer Phillips's questions. Officer Phillips stated that Lee's front teeth were missing and that he was worried that Lee had suffered a brain injury as a result of the beating. Officer Phillips testified that there was so much blood on the scene that it looked as if someone had been shot or stabbed. Lee told Officer Phillips that he had been beaten.

Dr. Bradford Scott testified that he was one of the doctors working in the emergency room of Ben Taub Hospital when Lee was admitted. Dr. Scott stated that Lee's face was severely swollen, that Lee had facial abrasions, and that there was some internal bleeding behind Lee's left eye. Lee was intubated in order to preserve his ability to breathe. Dr. Scott stated that the injuries Lee sustained placed Lee at a substantial risk of death.

Officer S.J. Anderson from the Houston Police Department's Robbery Division tes-

tified that, after the beating, Kaaba provided her with a license plate number of the car appellant was driving. Officer Anderson traced the license plate number to a car owned by appellant's relatives.

Officer Anderson showed Lee a photospread, and Lee identified appellant as the man who had assaulted him at Glover's house. Officer Anderson showed Kaaba a photospread, and Kaaba also identified appellant as the man who had beaten Lee.

Appellant went to the police station voluntarily to speak with Officer Anderson and gave her the names of two women who he said were with him elsewhere that night, Cynthia Dawkins and "VanLesa." Appellant told Officer Anderson that he was unable to provide her with the names of any other witnesses in Glover's garage that night.

Glover, the owner of the house, testified that four or five men were in his garage throwing dice on the evening of the assault. Glover stated that Lee was trying to "run" the dice game between Kaaba and appellant, and that Glover told Lee to stay out of the game. When the fight began, Glover stated that he was not in the garage but that he could hear the sounds of a commotion. Glover went into the garage and saw Lee and appellant fighting "with their fists." Glover stated that he believed the fight had started over the gambling and that Lee was being badly beaten by appellant. Glover stated Lee was leaning over in one corner of the garage while appellant continued to beat him. Glover never saw appellant kick Lee, and, although he indicated in his testimony that both men were fighting, Glover also stated at the end of his testimony that he never saw Lee strike appellant. Glover stated that Lee was not fighting back because he was bleeding so badly at the time. Glover told appellant to stop beating Lee and told appellant to leave, and then Glover helped Lee hide in Glover's house. Appellant initially left Glover's garage, but then returned with a woman. Appellant and the woman demanded that Glover open the door, and Glover stated at trial that the woman told appellant that they should kill Glover. Appellant and the woman took Glover's house keys and a pocketknife from Glover's pocket and forced their way into the house. Appellant and the woman then dragged Lee out of Glover's house into the street.

The defense presented the testimony of Vincent Starks ("Vincent"), appellant's brother, who testified that Lee was running the dice game between Kaaba and appellant and that appellant accused Lee of letting Kaaba cheat. Vincent testified that he was in the garage at one point, watching the dice game, but at the time the fight began, he was standing outside eating barbeque. Vincent said Lee and appellant began "tussling" and that Lee swung at appellant with his fist. Appellant then struck Lee, and Lee fell to the ground. When Lee fell to the ground, Vincent testified that two women began to hit Lee with a telephone as he lay on the garage floor. Vincent said that appellant never kicked Lee, and once Lee fell to the ground, he did not see appellant hit Lee again. Vincent also testified that appellant knew several people in the garage, including Vincent's wife, appellant's girlfriend, and another female friend.

Anthony Hicks, the second defense witness, stated that he had known appellant for 15 or 20 years. Hicks testified that he was also at Glover's home at the time of the fight and that appellant, appellant's girlfriend, Vincent, Vincent's wife, and another woman were also at Glover's house. According to Hicks, appellant and Lee were both taking part in the dice game when the fight began and appellant accused Lee of cheating at dice. Hicks testi-

fied that Lee swung at appellant first and appellant then struck Lee once after Lee hit him.

Before the trial court charged the jury, appellant requested a self-defense instruction be submitted to the jury. The trial court denied appellant's requested instruction. In overruling appellant's objection, the trial court stated that the proposed deadly-force instruction was not applicable based upon the evidence and that there was no applicable self-defense instruction to which appellant was entitled, based on the charge of aggravated assault by serious bodily injury. The following exchange occurred:

[Defense Counsel:] ... The Defense would object to the removal of, as I understood the Court to say, remove the self-defense charge that's in here.

[Court:] Well, if you read it it talks about deadly force.

[Defense Counsel:] Yes, sir.

[Court:] It wasn't applicable based on the evidence. There is no self-defense that is applicable.

[Defense Counsel:] Self-defense, defending himself against the use of force, the degree of force is what makes a difference.

[Court:] If there was evidence, I'd probably put it in there, but I don't believe based on the state of the evidence that self-defense is warranted in this case.

[Defense Counsel:] Well, Judge, we got evidence—

[Court:] I understand what you—make your objection. I'm telling you why it's not coming in. I don't have to tell you that, but I've got the impression that the defense is that he didn't do anything.

[Defense Counsel:] No, the defense is that the man swung on him and he swung back.

[Court:] Well, he's not entitled to self-defense on an aggravated assault for that. That is an aggravated assault, not an assault. That objection is overruled.

The jury returned a guilty verdict on the charge of aggravated assault and assessed punishment for 35 years confinement.

## Discussion

In four points of error, appellant challenges his conviction in the trial court. Appellant contends that: (1) the trial court erred by refusing to include a self-defense instruction in the jury charge, (2) the evidence was factually insufficient to support his conviction; (3) the prosecutor made improper jury arguments during the guilt/innocence stage; and (4) the prosecutor improperly commented on appellant's pre-arrest and pre-*Miranda* silence.

■ Because appellant did not object at trial to the statements made by the prosecutor that form the basis of his third and fourth points of error, he has waived his right to complain of the arguments on appeal. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996). Accordingly, we reach only appellant's first and second points of error.

### Self–Defense Instruction

In his first point of error, appellant contends that the trial court erred when it denied a self-defense jury instruction that was raised by the evidence and had been requested by appellant. Appellant claims that the trial court denied his requested jury instruction on the basis that, because he was charged with aggravated assault, he was not entitled to a jury instruction on self-defense. Appellant contends that his trial counsel objected to this ruling and that the objection was overruled. In his brief, appellant explains that his request for a self-defense instruction on aggravated assault was justified because it was

supported by evidence that the complaining witness hit appellant first and that appellant was merely defending himself.[1] In support, appellant refers us to section 9.31 of the Texas Penal Code, which states that "a person is justified in using force against another when and to the degree he reasonably believes force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31 (Vernon 2003).

The exchange between the trial court and appellant's trial counsel reveals that appellant's requested written instruction apparently tracked the language of section 9.32 of the Texas Penal Code, which states, in part:

A person is justified in using *deadly force* against another: (1) if he would be justified in using force against the other under Section 9.31; (2) if a reasonable person in the actor's situation would not have retreated; and (3) when and to the degree he reasonably believes the deadly force is necessary: (a) to protect himself against the other's use or attempted use of *unlawful deadly force;* or (b) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, robbery or aggravated robbery.

TEX. PEN.CODE ANN. § 9.32(a) (Vernon 2003) (emphasis added).

A trial court must charge the jury on any defensive issue raised by the evidence, "regardless of its substantive character." *Brown v. State,* 955 S.W.2d 276, 279 (Tex.Crim.App.1997).

A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge.

*Id.* (quoting *Williams v. State,* 630 S.W.2d 640, 643 (Tex.Crim.App.1982)). Accordingly, appellant was entitled to an instruction on self-defense using deadly force if the evidence showed that he used deadly force, and that he reasonably believed his use of deadly force was immediately necessary to protect himself against a use of deadly force by Lee, or the commission of aggravated kidnapping, murder, sexual assault, robbery, or aggravated robbery by Lee, and that a reasonable person in appellant's position would not have retreated.

The evidence brought forth by the State and that elicited by appellant presented two widely varying scenarios: under the State's evidence, after Lee and appellant exchanged words over the dice game, appellant was the aggressor and he proceeded to repeatedly hit and kick Lee, inflicting injuries so extensive that Lee was required to spend four days in an intensive care unit. Under appellant's version of events, presented by Vincent Starks, appellant's brother, and Anthony Hicks, a long time friend of appellant's, Lee was the first to strike, and appellant responded with one blow to Lee. Starks and Hicks testified that, after appellant hit Lee once, Lee fell to the ground, where he was then beaten with a telephone by two women bystanders. The jury was thus presented with two versions of the events that transpired in Glover's garage: either Lee hit appellant once, or Lee never hit appellant and appellant was the sole ag-

---

1. Lee weighed approximately 150 pounds while appellant, six feet, four inches tall, weighed approximately 260 pounds.

gressor. There was no evidence presented by either side to imply Lee used deadly force against appellant or that Lee was in the process of committing aggravated kidnapping, murder, sexual assault, robbery or aggravated robbery. Accordingly, appellant was not entitled to an instruction on self-defense/deadly force under section 9.32. However, the jury charge in this case not only contained an instruction on aggravated assault, but also an instruction on the lesser included offense of assault. With that instruction in the charge, the state of the evidence was such that appellant was entitled to a section 9.31 self-defense instruction.

In order to preserve error relating to a jury charge, there must either be an objection or a requested charge. *Vasquez v. State,* 919 S.W.2d 433, 435 (Tex. Crim.App.1996). Here, appellant did not submit a jury charge containing an instruction on self-defense under section 9.31. Accordingly, to preserve his point of error regarding the trial court's failure to include a self-defense instruction, appellant was required to make a specific objection to the trial court's charge. *See* Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon 1999) (defendant must distinctly specify each ground of objection to the charge). To properly preserve an issue for appellate review, there must be a timely objection that specifically states the legal basis for the objection. Tex.R.App. P. 33.1; *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App. 1990). The trial objection must have drawn the court's attention to the particular complaint later raised on appeal. *See Little v. State,* 758 S.W.2d 551, 564 (Tex. Crim.App.1988). Appellant's argument to the trial court was sufficient to draw the court's attention to his issue raised on appeal and, thus, properly preserved error. We hold that it was error not to include a section 9.31 self-defense instruction in the jury charge.

Having found appellant properly preserved error, we must determine if the trial court committed reversible error in denying a request for self-defense. Error properly preserved by an objection to the charge will require reversal "as long as the error is not harmless." *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996) (*citing Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984)). This means that any actual harm, regardless of degree, is sufficient to require reversal. *Hutch,* 922 S.W.2d at 171. To determine if there is any harm, the degree of harm must be weighed in light of the entire jury charge, state of the evidence, counsels' arguments, and any other relevant information revealed by the trial record as a whole. *Almanza,* 686 S.W.2d at 171. Here, the jury convicted defendant on the greater offense of aggravated assault. Once the jury convicted appellant of aggravated assault, having been properly charged on that offense, it had no reason to consider whether appellant might be guilty of the lessor-included offense of assault. *See Clark v. State,* 717 S.W.2d 910, 918 (Tex.Crim.App.1986). Thus, although defendant was entitled to a self-defense instruction for the lessor-included offense of simple assault, such error was harmless because the jury need not reach the latter issue.

Accordingly, we overrule appellant's first point of error.

**Factual Sufficiency**

In his second point of error, appellant contends that the evidence is factually insufficient to support his conviction for aggravated assault. In reviewing the factual sufficiency of the evidence, we determine "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of appellant's

guilt is so obviously weak as to undermine confidence in the jury's verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000).

Appellant refers to conflicts in the testimony of witnesses, specifically in the testimony of Lee and that of Vincent and Hicks. Appellant points to Lee's testimony that, once appellant hit him, Lee was unable to see appellant or to determine where he was in the garage. Because Vincent and Hicks testified that the fight began outside the garage, not inside as Lee stated, and that Lee's injuries were caused by the women who accompanied appellant, not appellant himself, appellant argues that Lee's testimony cannot support his conviction. Appellant also points to conflicts between Lee's testimony and that given by Glover. Glover stated that Lee was participating in the dice game, which Lee denied. Further, appellant notes that Glover stated he was not talking to Lee when the fight began, as Lee contended. These conflicts in the witnesses' testimony, appellant contends, render Lee's account of the events unreliable in the face of what appellant characterizes as uncontradicted evidence that appellant was not the person who inflicted serious bodily injury upon Lee.

 The jury, as trier of fact, is the sole judge of the credibility of witnesses, and may believe or disbelieve all or any part of a witness's testimony. *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.-Houston [1st Dist.] 1994, no pet.). The State presented the evidence of Lee and Glover, who both agreed that Lee suffered a severe beating at appellant's hands. Glover clearly stated that he saw appellant repeatedly beating Lee in the garage and that Lee was unable to fight back or to defend himself. The jury apparently chose to believe Glover and Lee rather than Vincent and Hicks. The jury is free to believe or disbelieve all or part of a witness' testimony. *Cain v. State*, 958 S.W.2d 404, 409 (Tex.Crim.App.1997). After reviewing all of the evidence presented, we do not find that the proof of appellant's guilt is so obviously weak as to undermine confidence in the jury's verdict, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson*, 23 S.W.3d at 11.

We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.