Opinion issued March 31, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01130-CR

———————————

Jason Eugene Acker, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 400th District Court 

Fort Bend County, Texas



Trial Court Case No. 46754B

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Jason Eugene Acker, of aggravated assault[1] and assessed his punishment
at 60 years’ confinement.  In three points
of error, appellant argues that the trial court erred in refusing to instruct
the jury (1) on the law of self defense and (2) on the requirement of voluntary
conduct and that (3) the evidence is insufficient to support the jury’s
verdict.

          We
affirm.

Background

Appellant was charged with two
counts of aggravated assault as a result of an April 6, 2007 drug deal gone
awry.  At trial, one of the complainants,
Harvey Roundtree, testified that, on the day in question, he and his cousin,
James Langham, the other complainant, had been working together at a music
recording studio.  Roundtree intended to
drive Langham home, and Langham asked Roundtree to stop at appellant’s home so
that Langham could purchase marijuana. 
When Roundtree and Langham arrived, a man was standing outside the bars
that enclosed the patio area of appellant’s home trying to sell appellant a
candle because appellant’s power was out. 
Appellant and the candle seller were arguing.  Appellant unlocked the gate to let Roundtree
and Langham into the patio area and then relocked the gate.  Langham gave appellant money for marijuana, but
appellant seemed agitated by the candle seller and had not given Langham any
marijuana when Roundtree “told him, ‘Man, hurry up.  We’re trying to go.  My cousin already gave you the money.’”  

According to Roundtree, appellant
then  “snapped. . . .  [Appellant] started taking his shirt off, and
he told the two girls that were at the door, ‘I’m fixing to kill these
n-i-g-g-a-s,’ you know, and he went in the house.”  Roundtree testified that appellant then “fired
a shot into the air.  He was like, ‘I’m
going to kill these dudes.  Y’all get in
the house, I’m fixing to kill these dudes.’” 
Roundtree also testified that, after appellant fired the shot in the air,
he said, “I’m fixing to kill y’all.  Get
on y’all’s knees, I’m fixing to kill y’all.” 

Roundtree testified that he
believed his life was being threatened and that he looked around to try to find
a way out of the enclosed patio area, but the gate was locked.  He also thought, “I’m not fixing to get on my
knees and give [appellant] an easy shot at my head, you know.  So I didn’t get on my knees when he said,
‘Y’all get on y’all’s knees,’ you know.” 
Instead, as appellant pointed the gun at Roundtree and Langham,
Roundtree “rushed [appellant] like a football tackle.”  Roundtree
first pushed appellant into a window and broke the window, then dropped
appellant on to the ground trying to “take the gun or get him to drop it.”  Once appellant was on the ground, appellant
still had the gun in his hand and Roundtree was standing over him.  Appellant reached around Roundtree.  Roundtree heard the gunshot, but did not
notice at first that he had been shot until he noticed a hole in his
shirt.  The shot knocked Roundtree to the
ground, and he heard appellant say, “Yeah, I told you don’t be rushing me like
that,” and then appellant kicked Roundtree twice in the ribs.  Appellant was still pointing the gun at
Roundtree, and Roundtree believed appellant was going to shoot him again.  Roundtree said, “Man, don’t kill me.  You know, I got a little girl.  Don’t kill me.”  Langham intervened and negotiated with
appellant to get him to unlock the gate and let them both leave.  Langham drove them away from appellant’s home
and called 911.  Emergency services met
Roundtree and Langham at Langham’s home nearby and took Roundtree to the
hospital.  Roundtree had a fractured rib
and a collapsed lung, and he had to have his spleen removed.  The bullet was still lodged in his spine at
the time of trial.  

Appellant’s counsel, questioning Roundtree about the report he made to
police said, “So you believed that the reason [appellant] was being aggressive
towards you was because [he] thought that you were trying to jump him; yes or
no?”  Roundtree answered, “No, I didn’t
believe that.  I just think he wasn’t in
his right mind at the time.”  Roundtree
also testified:

[Appellant] pushed my cousin, and he said, ‘What, are y’all trying to
jump me or something?’  He was just
rambling off at the mouth, you know.  He
was saying a bunch of things, and that’s what I was saying.  I didn’t—I didn’t say I thought he thought we
were going to jump him.  That’s what he
stated.

 

          Langham’s testimony regarding the incident
was similar to Roundtree’s.  Langham testified
that he had known appellant for years and thought they were on good terms.  Langham also testified that appellant let
them in the gate and relocked it. 
Appellant got offended when Roundtree tried to hurry him and “invaded
[Roundtree’s] personal space, like touching chest to chest.  [Appellant] said, ‘If you don’t feel like
waiting, you can get out.  You can leave
and get out.’”  However, Langham
testified that he and Roundtree could not get out because appellant had to let
them out.  When appellant was standing
chest to chest with Roundtree, Roundtree told appellant to “get out of [his]
face.”  At that point, no weapons had
been displayed, and Roundtree and Langham were unarmed.  

Langham tried to intervene and calm the two men down by putting his hand
between Roundtree and appellant, which prompted appellant to say, “Oh, y’all
trying to jump me?”  Appellant then pulled
a gun.  Langham testified that neither he
nor his cousin had tried to punch appellant or go after him in any way.  After appellant pulled the gun, he fired it
in the air.  Langham wanted to leave, but
could not get through the gate enclosing the patio area.  Appellant told the two girls to go in the
house because he was “fixing to kill these dudes,” and Langham thought he was
going to die because there was nothing he could do.  Then his cousin rushed appellant, they
scuffled, and Langham heard a gunshot.  Appellant
then pointed the gun at Langham and Langham said, “Just let me and my cousin
go.  You don’t have to worry about
him.  I just want to get my cousin some
help.”  Appellant took the keys out of
his pocket and opened the gate, and Langham helped his cousin up from the
ground and out to the vehicle.  

Once they were on the way to Langham’s house, Langham called 911.  An ambulance met them at Langham’s home and
took Roundtree to the hospital.  Langham
then gave the police a brief account of what had happened.  On cross-examination, Langham testified that
his cousin tackled appellant against the window, which had burglar bars in
front of it, but not until after appellant shot the gun in the air, pointed it
toward them, and threatened to shoot them. 
No other witnesses testified regarding the events surrounding the
shooting.  

At the jury charge conference, appellant
made several objections.  First,
appellant objected to the exclusion of a self-defense charge:

[W]e would object on the
fact that the self-defense charge is not included in the charge to the jury,
and we would offer the case law and would cite Smith v. State, 670 S.W.(sic)
584, that states it can be—that the issue of self-defense can be raised
without direct testimony from the defendant by other evidence. . . .  And we are saying that there is evidence to
raise the issue of self-defense in the fact that there’s testimony that the
shooter tried to stop them from coming forth by shooting up in the air, and
then by asking them to get on their knees, and they refused to stop, and he was
slammed against the window and against the concrete twice.  So, under those circumstances, if they—he would
be afraid that they would get his gun and afraid of deadly conduct.  Certainly, if they were attacking him, as
they did, it is a deduction, a reasonable deduction from the evidence that they
would be going after his gun, and, therefore he had the right to use deadly
force; also, the statement by Mr. James Langham that he felt that the Defendant
was in fear of being attacked by the two people.

 

The State responded that appellant’s argument misconstrued
the evidence, and argued that the self-defense theory “was inconsistent with
their assertion that ‘I didn’t do it’ or ‘I wasn’t there, I didn’t have
anything to do with this crime,’ which is also I think somehow raised by this
teeth argument, that maybe it wasn’t the same person and what have you.”  The trial court overruled appellant’s
objection to the charge.

Appellant then continued:

[W]e would object to the
fact that the charge does not have a paragraph, or a charging paragraph that
would state that, “If you feel the Defendant had no intent of discharging the
firearm or hurting anybody, then you would acquit him,” because he did not have
the intent to cause the injury and did not have the intent to pull the trigger.  Because under the circumstances of such a
fierce scuffle with James Langham, then it could have discharged—or with
the complainant that got shot, Harvey Roundtree, that the gun could have gone
off accidentally, and therefore, we would request that part of the charge in
the—that part of the paragraph in the charge.

 

The State responded, “There’s no special charge to
be given for that circumstance, and . . . there’s nothing in the record to say
this was accidental, and even if there was, there wouldn’t be a separate
charge, it would be a comment.  And it’s
taken care of by the fact that the act has to be intentional and knowingly, it
has a mental state already in the act.” 
The trial court overruled appellant’s objection.

Jury Instructions

In his first and second points of
error, appellant contends that the trial court erred in failing to instruct the
jury on the defensive issues of self-defense and voluntary conduct.

 

A.  
Standard of Review

We review jury charge error in a
two-step process.  Ngo v. State, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).  First, we determine whether error exists in
the charge.  Id.  If there is error, we
then review the record to determine whether sufficient harm was caused by the
error to require reversal of the conviction. 
Id.  When the accused has properly objected to the
error in the jury charge, reversal is required unless the error was harmless.  Id. at
743; see also Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim App. 1984). 
However, if no objection was made at trial, reversal is proper only if
the error is so egregious and created such harm that it might be fairly said
that the defendant did not have a fair and impartial trial.  Almanza,
686 S.W.2d at 171.

In order to preserve error relating
to a jury charge, there must either be an objection or a requested charge.  Starks
v. State, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet.
dism’d) (citing Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996)).  Because appellant did not submit a jury
charge containing instructions on self-defense and voluntary conduct, he was
required to make a specific objection to the trial court’s charge to preserve
his points of error for appellate review. 
See id. (citing Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 1999) (providing that defendant must distinctly specify each ground of
objection to jury charge)).  To preserve
an issue for appellate review, the party must make a timely objection that
specifically states the legal basis for the
objection.  Id. (citing Tex. R. App. P.
33.1 and Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990)).  The
objection must draw the trial court’s attention to the particular complaint
later raised on appeal.  Id.

When a defensive theory is raised
by the evidence from any source and a charge is properly requested, it must be
submitted to the jury.  Woodfox v. State, 742 S.W.2d 408,
409–410 (Tex. Crim. App. 1987); see Shaw
v. State, 243 S.W.3d 647, 658 (Tex. Crim App. 2007).  A defendant is entitled to an instruction on
every defensive issue raised by the evidence, regardless of whether the
evidence is strong, feeble, unimpeached, or contradicted, and even when the
trial court thinks that the testimony is not worthy of belief.  Walters
v. State, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007); see also Rogers v. State, 105 S.W.3d 630, 637 (Tex. Crim. App.
2003) (treating voluntariness of conduct as defensive issue); Starks, 127 S.W.3d at 132 (holding that
self-defense is defensive issue).  We
review a trial court’s decision not to include a defensive issue in a jury
charge for an abuse of discretion, and we view the evidence in the light most
favorable to the defendant.  See Bufkin v. State, 207 S.W.3d 779, 782
(Tex. Crim. App. 2006); Love v. State,
199 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).

 

 

B.  
Self-Defense

In his first point of error,
appellant argues that the trial court erred in failing to instruct the jury on
self-defense.  The State argues that
appellant’s objection at trial failed to preserve this issue and that, even if
the argument is preserved, appellant was not entitled to an instruction on
self-defense.

1.     Preservation

The State argues that appellant
failed to preserve this complaint because appellant’s objection at trial was
not sufficiently specific.  However,
appellant’s objection clearly stated that he was requesting an instruction on
self-defense relating to appellant’s conduct toward both Roundtree and Langham.  See Starks, 127 S.W.3d at 133 (holding that when,
as here, appellant did not submit jury charge containing requested instructions,
he was required to make specific objection to the trial court’s charge to
preserve his points of error for appellate review).  Thus, appellant’s objection was timely,
specifically stated the legal basis for his objection, and was sufficient to
draw the trial court’s attention to the particular complaint raised on appeal.  See id.;
see also Carmen v. State, 276 S.W.3d
538, 541 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d) (“An imperfect
objection is sufficient to preserve error ‘if the record indicate[s] that the
trial judge understood appellant’s request to encompass the matters about which
appellant now complains.’”) (quoting Bennet
v. State, 235 S.W.3d 241, 243 & n.9 (Tex. Crim. App. 2007)).

We conclude that appellant
preserved this point of error for appellate review.

2.     Analysis

“Self-defense is a justification
for one’s actions and necessarily requires an admission of the conduct at
issue.”  Kimbrough v. State, 959 S.W.2d 634, 640 (Tex. App.—Houston [1st
Dist.] 1995, pet. ref’d); see also Shaw,
243 S.W.3d at 659 (holding defensive instruction only appropriate when
defendant “essentially admits” to every element of offense including culpable
mental state, but interposes justification to excuse otherwise criminal
conduct).  Thus, “[a] defendant is
entitled to an instruction on the law of self-defense if there is some evidence
that he intended to use force against another and he did use force, but he did
so only because he reasonably believed it was necessary to prevent the other’s
use of unlawful force.”  Ex parte Nailor, 149 S.W.3d 125, 132
(Tex. Crim. App. 2004) (citing Tex.
Penal Code Ann. § 9.31(a) (“[A]
person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other’s use or attempted use of unlawful force”)).  The
evidence raising the issue of self-defense can come from any source.  See
Kimbrough, 959 S.W.2d at 639–40.  A
defendant is not required to testify in order to raise the issue of
self-defense—the issue may be raised by
the testimony of witnesses who testify to the defendant’s acts and words at the
time of the offense.  Reed v. State, 703 S.W.2d 380, 384–85
(Tex. App.—Dallas 1986, pet. ref’d) (citing Smith
v. State, 676 S.W.2d 584, 587 (Tex. Crim. App. 1984)).

No self-defense instruction is
required “when the evidence establishes as a matter of law that force is not
justified in self-defense.”  Elmore v. State, 257 S.W.3d 257, 259
(Tex. App.—Houston [1st Dist] 2008, no pet.).  A person who would otherwise
be entitled to act in self-defense forfeits the right to defend himself if he
provoked the other’s use or attempted use of unlawful force.  Tex.
Penal Code Ann. § 9.31(b)(4) (Vernon Supp. 2010); see also Kennedy v. State, 193 S.W.3d 645, 654 (Tex. App.—Fort Worth
2006, pet. ref’d) (“Provoking the use of force acts as a limitation or total
bar on a defendant’s right to self-defense.”).

There was no evidence in the record
that appellant used force only because he reasonably believed it was necessary
to prevent another’s use of unlawful force. 
See Ex parte Nailor, 149
S.W.3d at 132–34.  Appellant argues that
Langham’s testimony establishes that appellant believed that Langham and
Roundtree intended to “jump” appellant, and thus appellant fired a shot in the
air to deter them.  Appellant further
argues that he did not shoot Roundtree until after Roundtree slammed him into a
wall.  However, appellant’s arguments
misconstrue Langham’s and Roundtree’s testimony.  Langham testified that he tried to intervene between Roundtree and
appellant by putting his hand between them, which prompted appellant to say,
“Oh, y’all trying to jump me?”  Roundtree
testified that appellant was not in his right mind at the time of the incident
and that when appellant said, “What, are y’all trying to jump me or something?”
he was “just rambling off at the mouth.” 
Both Langham and Roundtree testified that they were unarmed and that
they did not threaten or otherwise “go after” appellant in any way before
appellant pulled the gun out, shot it in the air, and told them to get on their
knees so he could shoot them.  The
undisputed evidence at trial was that appellant provoked any use of
force on the part of the complainants.  See Childs v. State, 21 S.W.3d 631, 636
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (holding that defendant who pointed gun at taxi-cab driver could
not claim self-defense when fatally shooting driver).  Thus, no self-defense instruction is required
because the testimony of the witnesses established that any use of force by
appellant was not justified and that appellant could not have reasonably
believed his use of force was necessary to prevent Roundtree’s use of force.  See
Elmore, 257 S.W.3d at 259; Ex parte
Nailor, 149 S.W.3d at 132.

Furthermore, we observe that
appellant’s arguments that he was entitled to a jury instruction on
self-defense are undermined by the defensive theories presented at trial.  None of appellant’s witnesses adduced any
evidence “essentially admitting” that appellant committed the conduct at
issue.  In fact, appellant’s defensive
theories at trial focused on attempting to discredit Roundtree’s and Langham’s
identification of him as the assailant through counsel’s cross-examination of
both complainants on this issue and appellant’s mother’s testimony regarding
his dental work.  Appellant also
attempted to discredit the process the police officers used to take the
complainants’ statements and the use of the photographic line-up.  See
Kimbrough, 959 S.W.2d at 640 (holding that self-defense necessarily
requires admission of conduct at issue).

We overrule appellant’s first point
of error. 

C.  
Voluntariness

In his second point of error,
appellant argues that the trial court erred in refusing to instruct the jury on
voluntary conduct.  The State, however,
argues that appellant’s objection at trial failed to preserve this issue for
appeal.  

Texas Penal Code section 6.01(a)
provides, “A person commits an offense only if he voluntarily engages in
conduct, including an act, an omission, or possession.”  Tex.
Penal Code Ann. § 6.01(a)
(Vernon 2003).  “Voluntariness” refers to
one’s own physical body movements.  Rogers, 105 S.W.3d at 638.  “If those physical movements are the
nonvolitional result of someone else’s act, are set in motion by some
independent non-human force, are caused by a physical reflex or convulsion, or
are the product of unconsciousness, hypnosis or other nonvolitional impetus,
that movement is not voluntary.”  Id.  However, the word “accident” has a more
general meaning, and the Court of Criminal Appeals has discouraged the use of
the word “accident” to refer to an involuntary act under Penal Code section
6.01(a).  Id. at 638–39; Williams v.
State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982).  Thus, a request for an “accident” instruction
is not the equivalent of a request for an instruction concerning “a voluntary
act.”  Rogers, 105 S.W.3d at 636–40. 
Likewise, “[t]he issue of voluntariness of one’s conduct, or bodily
movements, is separate from the issue of one’s mental state.”  Hayes
v. State, 124 S.W.3d 781, 788–89 (Tex. App.—Houston [1st Dist.] 2003)
(citing Adanandus v. State, 866
S.W.2d 210, 230 (Tex. Crim. App. 1993)), aff’d
161 S.W.3d 507 (Tex. Crim. App. 2005). 


If a defendant engaged in a
voluntary act and had the requisite mental state, his conduct is not rendered
involuntary simply because his conduct also included an involuntary act or
because he did not intend the result of his conduct.  See
Cruz v. State, 838 S.W.2d 682, 686 (Tex. App.—Houston [14th Dist.] 1992,
pet. ref’d); Owens v. State, 786
S.W.2d 805, 809 (Tex. App.—Fort Worth 1990, pet. ref’d) (holding that trial
court was correct in refusing charge on voluntary conduct where evidence showed
involuntary act that was merely part of overall voluntary conduct); see also Adanandus, 866 S.W.2d at 230
(holding that conduct was not involuntary merely because accused did not intend
result of his conduct).  Furthermore, “an
instruction on voluntariness under section 6.01(a) is necessary only if the
accused admits committing the act or acts charged and seeks to absolve himself
of criminal responsibility for engaging in the conduct.”  Peavey
v. State, 248 S.W.3d 455, 465 (Tex. App.—Austin 2008, pet. ref’d); Trujillo v. State, 227 S.W.3d 164, 169
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  To assert an “involuntary act” as a defense,
the defendant must produce “evidence of an independent event, such as the
conduct of a third party, that could have precipitated the incident.”  Rhodes
v. State, 997 S.W.2d 692, 694 (Tex. App.—Texarkana 1999, pet. ref’d)
(citing Brown v. State, 955 S.W.2d
276, 280 (Tex. Crim. App. 1997)).

Here, in his objection to the jury
charge, appellant stated he wanted “a charging paragraph that would state that,
‘If you feel the Defendant had no intent of discharging the firearm or hurting
anybody, then you would acquit him.’”  Appellant’s
objection to the trial court was based on the arguments that appellant “did not
have the intent to cause the injury” and “did not have the intent to pull the
trigger,” and appellant also briefly mentioned that the gun went off
“accidentally.”  The reference to
appellant’s intent and the brief argument that the gun “could have gone off
accidentally” were not sufficient to put the trial court on notice that
appellant was seeking a jury instruction on voluntary conduct under section
6.01(a) of the Penal Code.  See Rogers, 105 S.W.3d at 636–39; Hayes, 124 S.W.3d at 788–89.

Even if appellant’s objection at
trial was sufficient to put the trial court on notice that he was seeking an
instruction on voluntary conduct, the trial court did not err in concluding
that appellant was not entitled to such an instruction.  As we have already discussed, appellant’s
defensive evidence at trial did not include any evidence that appellant
committed the charged acts but was in some way justified in doing so—rather, the evidence adduced by appellant at
trial attempted to discredit Roundtree’s and Langham’s identification of him as
the assailant.  See Peavey, 248 S.W.3d at 465 (“[A]n instruction on voluntariness
under section 6.01(a) is necessary only if the accused admits committing the
act or acts charged and seeks to absolve himself of criminal responsibility for
engaging in the conduct.”).  Furthermore,
the record contains no evidence of any independent event that could have
precipitated the incident.  See Rhodes, 997 S.W.2d at 694.  Although both Roundtree and Langham testified
that Roundtree tackled appellant and fought with him before Roundtree was shot,
neither of them offered any testimony that appellant lost control of the gun or
that Roundtree or some other independent force could have caused the gun to
discharge.  Appellant’s assertion on
appeal and during the charge conference that the gun “could have gone off
accidentally” is not evidence and is not supported by the evidence.

We overrule appellant’s second
point of error.

 

Sufficiency of the Evidence

In his third point of error,
appellant challenges the sufficiency of the evidence.[2]

A.  
Standard of Review

In a sufficiency of the evidence
review, we view the evidence in the light 
most favorable to the verdict to determine whether any rational fact-finder
could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Brooks v. State, 323 S.W.3d
893, 912 (Tex. Crim. App. 2010).  The
jurors are the exclusive judges of the facts, the credibility of the witnesses,
and the weight to be given to the testimony. 
McKinny v. State, 76 S.W.3d 463,
468–69 (Tex. App.—Houston [1st
Dist.] 2002, no pet.).  Thus, a jury may believe
or disbelieve all or any part of a witness’s testimony.  Id.  We may not re-evaluate the weight and
credibility of the evidence or substitute our judgment for that of the
fact-finder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We resolve any inconsistencies in the
evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

Appellant was convicted of two
counts of aggravated assault with a deadly weapon.  A person commits the offense of assault if he
“intentionally, knowingly, or recklessly causes bodily injury to another” or if
he “intentionally or knowingly threatens another with imminent bodily injury.”  Tex.
Penal Code Ann. § 22.01(a)(1)–(2) (Vernon Supp. 2010).  A person commits the offense of aggravated
assault if he commits an assault and he “causes serious bodily injury to
another” or “uses or exhibits a deadly weapon during the commission of the
assault.”  Id. § 22.02(a).

Here, both Roundtree and Langham
testified that after Langham gave appellant the money for some marijuana,
appellant became agitated toward them, threatened them with a gun, fired the
gun into the air, and made comments like, “I’m fixing to kill these dudes” and
“Get on y’all’s knees, I’m fixing to kill y’all.”  This evidence was sufficient to show that
appellant intentionally or knowingly used or exhibited a deadly weapon while
threatening Roundtree and Langham with imminent bodily injury.  See id.
§§ 22.01(a)(2), 22.02(a)(2).

Appellant argues only that “the
evidence that [he] intentionally, knowingly, or recklessly caused bodily injury
to Roundtree by the use of a firearm was extremely weak” because “it was just
as likely that the gun went off as a result of conduct of a third party rather
than the result of a voluntary act by appellant.”  However, it is not necessary for the State to
prove that appellant caused serious bodily injury to convict for aggravated
assault when a deadly weapon was used or exhibited.  See id.
§ 22.02(a)(2); see also Williams v.
State, 226 S.W.3d 611, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We overrule appellant’s third point
of error.

Conclusion

          We affirm
the judgment of the trial court.

 

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §22.02(a)
(Vernon Supp. 2010).





[2]
          Appellant challenged the factual
sufficiency of the evidence under Clewis
v. State.  However, in Brooks v. State, the Court of Criminal Appeals overruled Clewis and its progeny and directed that evidence be reviewed only
under the sufficiency standard described in Jackson
v. Virginia.  323 S.W.3d 893, 912
(Tex. Crim. App. 2010); Ervin v. State,
No. 01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.]
Nov. 10, 2010, pet. ref’d) (construing majority holding in Brooks).  We therefore
construe appellant’s contention as solely challenging the sufficiency of the
evidence, as provided under Brooks.