**Opinion issued September 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-13-00907-CR**

———————————

**RANDY MAZUERA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1870669**

---

**MEMORANDUM OPINION**

Randy Mazuera appeals a judgment convicting him of misdemeanor assault

of a family member. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (West Supp.

2014). A jury found Mazuera guilty, and the trial judge sentenced him to 180 days

in county jail.  In his sole issue on appeal, Mazuera contends that the evidence is legally insufficient to support his conviction.  We affirm.

## Background

Mazuera and Asusena Cenobio dated from 2003 to 2011.  They have two children together—J.M. and R.M., who were eight and six, respectively, at the time of the incident.

At trial, Latoya Archie, who knew neither Mazuera nor Cenobio, testified that on December 31, 2012, she was driving out of a Wal-Mart parking lot when she saw Mazuera intentionally slam Cenobio's head inside a truck door in the neighboring parking lot of a fast food restaurant.  Archie stopped her car and called 9-1-1 because she feared for Cenobio's safety and because she saw two children running back and forth between the truck and another car.  Archie did not see Mazuera hit or push Cenobio, but she saw Cenobio fall.

Cenobio testified that she and Mazuera were no longer romantically involved in December 2012, but that they agreed to meet at 10:00 a.m. at the fast food restaurant so that Mazuera could give her grocery money.  After Mazuera arrived with his girlfriend and daughter, the children ate and played in the playground, and Mazuera gave Cenobio money for groceries.

Cenobio testified that when she decided to leave, Mazuera grabbed J.M. and R.M. and said he was taking them with him.  Cenobio protested, but Mazuera put

2

the children in his truck. Cenobio testified that while she was trying to get her sons out of the truck, Mazuera "tried to slam the door on [her] head." Cenobio raised her arm to protect her head and the door hit her on the shoulder and arm, causing pain. She testified that Mazuera then slammed her on the concrete, which hurt. Cenobio testified that after the incident, she went to the home of her mother, Consuela Perez. She was in a lot of pain, and stayed in bed while at Perez's house because she could not move. Cenobio testified that she had bruises on her back and that she asked Perez to massage her back because it hurt.

Perez testified. She confirmed that Cenobio cried while at her house, but she also testified that Cenobio did not complain about any pain. Perez said that Cenobio did not ask for a massage and that Perez did not see any bruises on Cenobio. Perez testified that she and Cenobio do not have a good relationship, and that Cenobio "likes to lie a lot."

Maria Magana, Mazuera's live-in girlfriend of two years, also testified. She told the jury that, as they were leaving the fast food restaurant, Mazuera asked Cenobio for her permission to take the kids to visit with his brother, who was visiting from Colombia. She testified that Mazuera and Cenobio were talking beside his truck and that Cenobio started "making a scene . . . trying to make [her kids] feel bad," and telling the boys to get out of the truck when the boys did not want to. According to Magana, Cenobio was yanking on the truck door, trying to

3

get the boys out of the truck, and fell down. Magana testified that after Cenobio got up, she slapped Mazuera, and then Cenobio and Mazuera talked calmly by Cenobio's car until the police arrived. Magana testified that she did not see Mazuera push, grab, or slam Cenobio on the ground.

The complaint and information set forth two manners and means for the assault—"intentionally and knowingly caus[ing] bodily injury" by "pushing the Complainant with his hand" and by "striking the Complainant with the door of a vehicle." The jury was charged in the disjunctive and returned a verdict of guilty.

## Discussion

In his sole point of error, Mazuera contends that the evidence is legally insufficient to support his conviction. Specifically, Mazuera argues that a rational jury could not have found him guilty given Cenobio's purportedly self-contradictory testimony and the inconsistencies between Cenobio's testimony and that of the other witnesses.

## A.     Standard of Review

"When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt." *McGregor v. State*, 394 S.W.3d 90, 109 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct.

4

2781, 2789 (1979)); *see also Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding *Jackson* standard is only standard to use when determining sufficiency of evidence).

"The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony." *McGregor*, 394 S.W.3d at 110 (citing *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008)); *see Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (The jury is the "sole judge of the weight of the evidence and may choose to believe all, some, or none of it."). "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *McGregor*, 394 S.W.3d at 110 (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). "We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder." *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). We afford almost complete deference to the jury's determinations of credibility and we resolve any inconsistencies in the evidence in favor of the verdict. *Id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

**B.     Applicable Law**

As relevant here, a person commits assault of a family member if the person intentionally or knowingly causes bodily injury to a person with whom the actor

has or has had a dating relationship, or against an individual who is a parent of the actor's child. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2); § 71.0021 (West 2011); § 71.003 (West 2011). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2014).

## C.     Analysis

The information charged Mazuera with "intentionally and knowingly caus[ing] bodily injury" by both "pushing the Complainant with his hand" and by "striking the Complainant with the door of a vehicle." The jury was charged in the disjunctive, and thus the jurors were not required to agree upon a single manner and means. *See Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 958, 112 S. Ct. 2309 (1992). Mazuera contends that the inconsistencies in the testimony render the evidence insufficient to support either of the manner and means charged.

We conclude that sufficient evidence supports the jury's guilty verdict. Archie, who knew none of the parties, testified that she witnessed Mazuera intentionally slam Cenobio's head in the truck door. And Cenobio testified that Mazuera tried to slam the door on her head, and that she raised her arm to protect herself, causing the door to slam into her shoulder and arm and cause her pain.

Cenobio also testified that Mazuera slammed her onto the ground, causing her further pain. Finally, Cenobio testified that after the assault, she was in a lot of pain, stayed in bed because she could not move, had bruises on her back, and asked Perez to massage her back to alleviate the pain. This evidence supports both manner and means alleged in the information.

Mazuera points out inconsistencies in the testimony supporting the verdict and evidence that supported his claims of innocence. For example, Archie testified that she witnessed Mazuera slam the car door on Cenobio's head, but Cenobio testified that he did not slam her head in the truck door. Mazuera also points to the fact that Archie did not witness him hit or push Cenobio, while Cenobio testified that he grabbed her and slammed her to the ground. Likewise, Cenobio claimed to be bruised and to have asked Perez for a massage, but Perez testified that Cenobio did not complain about pain, show her any bruises, or ask for a massage, and that Cenobio lies. Finally, Mazuera argues that his girlfriend testified that he did not assault Cenobio. While the evidence conflicted in some respects, it is the province of the jury to accept one version of the facts and reject another. *See Heiselbetz*, 906 S.W.2d at 504 (jury is the "sole judge of the weight of the evidence and can choose to believe all, some, or none of it"); *McGregor*, 394 S.W.3d at 109–10 (court of appeals defers to jury's determinations of credibility and resolves any inconsistencies in the evidence in favor of the verdict). Because the standard of

7

review requires that we view the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that Mazuera intentionally or knowingly caused Cenobio bodily injury by pushing her with his hand or striking her with the door of a vehicle. *See Heiselbetz*, 906 S.W.2d at 504; *McGregor*, 394 S.W.3d at 109–10. Accordingly, we hold that the evidence was legally sufficient to support the judgment. *See, e.g.*, *Starks v. State*, 127 S.W.3d 127, 133–34 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (affirming assault conviction despite conflicts in witnesses' testimony because jury was free to believe or disbelieve all or any part of a witness's testimony).

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).